[No. 47155-4-I. Division One. March 4, 2002.]

SAMUEL COLACURCIO, *Appellant*, v. DAWN BURGER, ET AL., *Respondents*.

*A. Graham Greenlee*, for appellant.
*Edwin J. Snook*, for respondents.

COLEMAN, J. — After Samuel Colacurcio and Dawn Burger were involved in a car accident, Colacurcio filed suit against

Burger. Colacurcio moved for and was granted an order of default, and default judgment was entered shortly thereafter. Colacurcio did not provide notice of the motion for default to Burger. Colacurcio had engaged in extensive settlement negotiations with Burger's insurance company before and after the suit was filed and before and after the motion for default. These actions amounted to an informal appearance by Burger, as the claims adjusters were acting as her agents. Because Burger had appeared, she was entitled to notice of the motion for default under CR 55(a)(3). Because Colacurcio failed to provide notice, Burger was entitled to vacation of the default judgment as a matter of right. The trial court properly granted Burger's motion to vacate.

## FACTS

In August 1997, Samuel Colacurcio and Dawn Burger were involved in a car accident when Burger crashed into the driver's side of Colacurcio's car while making a left turn. Burger reported the accident to her insurance company, who engaged in negotiations with Colacurcio's attorney. On August 9, 1997, Burger's insurance company paid Colacurcio $884.33 for his property damage. On August 12, 1997, Colacurcio's attorney sent a letter to Burger's insurance company confirming his representation of Colacurcio and requesting that all future communications regarding the claim be directed to his office. On August 18, 1997, Burger's insurance company sent Colacurcio's attorney a letter requesting medical records, bills, and documentation supporting any claim of wage loss.

Between November 1, 1997, and June 28, 1998, a claims representative from Burger's insurance company contacted Colacurcio's attorney at least 15 times to request records, inquire as to the status of the claim, and to attempt to obtain a demand. On May 7, 1998, a representative from Colacurcio's attorney's office told the claims representative that they would be sending a settlement demand in the

near future. On June 19, 1998, the claims representative was told that Colacurcio's attorney still did not have a demand ready to send. On July 19, 1998, the claims representative again contacted Colacurcio's attorney's office and was told that counsel still did not have the material ready to submit the demand.

Meanwhile, on June 28, 1998 (less than 10 days after a contact with Burger's insurance company), a process server left a copy of a summons and complaint with an "Ingrid Phelps" at an address that Burger had listed as hers with her probation officer. Burger alleges that she did not receive the summons and complaint. On August 3, 1998 (two weeks after another contact with Burger's insurance company), Colacurcio moved for an order of default, and said order was granted that same day. Default judgment was entered on September 18, 1998, in the amount of $30,998.70. Colacurcio did not serve notice of the entry of the order of default or default judgment on Burger. Nor did Colacurcio or his attorney tell Burger's insurance company about the default judgment (or the filing of the lawsuit), notwithstanding the fact that settlement negotiations were ongoing. Between July 30, 1998, and November of 1999, claims representatives from Burger's insurance company contacted Colacurcio's attorney or his assistant at least 26 times.

On May 18, 1999, Burger was stopped for having expired tabs on her car. She then learned that her license had been suspended due to the default judgment. Rather than recontacting her insurance company, Burger retained attorney D. Willas Miller to assist her. On July 1, 1999, Miller filed a motion for an order to show cause why the default judgment should not be set aside. In support of that motion, Burger submitted declarations from herself and her former boyfriend stating that Burger had moved out of Ingrid Phelps' home approximately three weeks before the summons and complaint were left at Phelps' address. The court ordered Colacurcio to appear and show cause why an order vacating the default judgment should not be entered.

Colacurcio's attorney filed a response to Burger's motion to vacate, and the hearing was continued. The motion was never heard because, apparently, Miller was suspended for nonpayment of his bar dues.

In October 1998, a new claims adjuster was assigned to handle Colacurcio's claim against Burger. On October 28, 1999, she sent a letter to Colacurcio's attorney. On November 8, 1999, Colacurcio's attorney wrote back that it was a "relief" to hear from her, because Burger had "retained an attorney who has shown himself to be less than vigorous in his defense of the lawsuit which we filed against her." He also informed the claims adjuster that default judgment had been entered on September 18, 1998, and requested that the adjuster "look into the matter and let me know where we are going from here." This was the first notice Burger's insurance company had of the lawsuit against its insured.

Upon learning of the default judgment, Burger's insurance company began to try and locate her. They finally found her in March 2000. The insurance company was unable to locate Burger's attorney, Miller. The insurance company retained new counsel for Burger, who brought a second motion to vacate the default order and judgment.

In support of that motion, counsel resubmitted Burger's declaration stating that although she had lived with Ingrid Phelps at the address at which the summons and complaint had been served beginning on March 12, 1998, on June 1, 1998, Burger moved in with her boyfriend at another address in Seattle. According to Burger, Phelps had never informed her about the process server leaving the summons and complaint for her, as they were not speaking due to a personal conflict.

On July 20, 2000, Colacurcio filed a response to Burger's motion. In support thereof, he filed a declaration from the process server, who claimed that when he served the summons and complaint, both Ingrid Phelps and her boyfriend stated that Burger still lived at that address. Colacurcio requested a continuance of the motion to vacate,

as Burger's deposition was scheduled for the next day, July 21, 2000.

The trial court denied the motion to continue and entered an order on July 25, 2000, vacating and setting aside the order of default and default judgment as to damages. In that order, the trial judge noted that, "On the uncontested facts of this case, defendant was entitled to notice under CR 55(a)(3) of the Motion for Default. *Cf. City of Des Moines v. $81,231 [in United States Currency]*, 87 Wn. App. 689[, 943 P.2d 669] (1997)."

On August 4, 2000, Colacurcio moved for reconsideration of the order vacating the order of default and default judgment. In support of that motion, he attached a copy of Burger's deposition. In that deposition, Burger admitted that she had moved in with Ingrid Phelps after being released from prison and that that address was approved by the "probation department." She did not inform the probation department when she moved out of Phelps' home and into her boyfriend's home, because she did not think that they would approve of her living with him. Burger further admitted that she still had personal belongings at Phelps' home, including clothing. She did not give a change of address to the probation department until November 1998, when she moved into a new residence.

On August 7, 2000, the trial court denied Colacurcio's motion for reconsideration. This appeal follows.

## DISCUSSION

 This court reviews a trial court's decision to vacate a default judgment for an abuse of discretion. *White v. Holm*, 73 Wn.2d 348, 351, 438 P.2d 581 (1968). Default judgments are disfavored because " '[i]t is the policy of the law that controversies be determined on the merits rather than by default.' " *Griggs v. Averbeck Realty, Inc.*, 92 Wn.2d 576, 581, 599 P.2d 1289 (1979) (alteration in original) (quoting *Dlouhy v. Dlouhy*, 55 Wn.2d 718, 721, 349 P.2d 1073 (1960)). Therefore, this court is less likely to find an

abuse of discretion if a trial court has set aside a default judgment rather than if it has refused to do so. *Griggs*, 92 Wn. App. at 582.

In this case, the trial court vacated the default order and default judgment based upon CR 55(a)(3) and the case of *City of Des Moines v. $81,231 in United States Currency*, 87 Wn. App. 689, 943 P.2d 669 (1997). CR 55(a)(3) provides that if a party has "appeared" before the motion for default has been filed, he or she is entitled to notice of the motion for default. *City of Des Moines* holds that because default judgments are disfavored, the concept of "appearance" is to be construed broadly for purposes of CR 55. The statutory methods of appearance in RCW 4.28.210 are not exclusive. Informal acts may also constitute an appearance. " 'Whether a party has "appeared" . . . is generally a question of intention, as evidenced by acts or conduct, such as the indication of a purpose to defend or a request for affirmative action from the court, constituting a submission to the court's jurisdiction.' " *City of Des Moines*, 87 Wn. App. at 696 (alteration in original) (quoting *Gage v. Boeing Co.*, 55 Wn. App. 157, 161, 776 P.2d 991 (1989)). *See also Skilcraft Fiberglass, Inc. v. Boeing Co.*, 72 Wn. App. 40, 863 P.2d 573 (1993).

Based on the trial court's reasoning, it is clear that the court implicitly found that Burger had informally appeared through the actions of her agents, the insurance claims adjusters. We review the trial court's determination of whether a party has informally appeared for an abuse of discretion. *Batterman v. Red Lion Hotels, Inc.*, 106 Wn. App. 54, 59, 21 P.3d 1174, 1177 (2001). Based on *Batterman*, we hold that the trial court did not abuse its discretion.

As we noted in *Batterman*, Washington courts "broadly construe the concept of appearance to accomplish its object, which is to apprise the plaintiff of the course the defendant intends to pursue, and whether the defendant intends to litigate the case. Default judgments are normally viewed as proper only when the adversary process has been halted because of an essentially unresponsive party."

*Batterman*, 106 Wn. App. at 61 (citation omitted). In *Batterman*, the defendant's agent spent a great deal of time trying to obtain documentation of the plaintiff's claim in order to negotiate a settlement. Similarly, in this case, Burger's insurance company paid out money for Colacurcio's property damage. Burger's claims adjusters repeatedly contacted Colacurcio's attorney attempting to obtain medical records and documentation to support a claim of wage loss.[1] As we held in *Batterman*, "A defendant who is interested in reviewing records for the purpose of ascertaining the value of a claim is not an essentially unresponsive party and cannot be assumed to have abandoned the possibility of defense." *Batterman*, 106 Wn. App. at 62. Like the plaintiffs in *Batterman*, *Skilcraft*, and *Gage*, Colacurcio should have "entertained no illusions" about Burger's intentions (as evidenced by the actions of her agents) to defend the lawsuit. *Id.*

We recognize that in this case, Burger's insurance company was not aware that a lawsuit had been filed while it was attempting to negotiate with Colacurcio. But as we held in *Batterman*, a defendant's acts (and/or those of his or her agent) need not acknowledge the lawsuit in order to amount to an informal appearance. "Instead of considering whether the informal acts specifically respond to the complaint or were directed towards the court, our courts have focused on whether the acts were sufficient to demonstrate an intent to defend." *Batterman*, 106 Wn. App. at 61. The fact that Burger and her claims adjusters may not have had actual knowledge that the lawsuit had been initiated by substitute service is therefore not determinative on the

---

[1] On appeal, Colacurcio apparently challenges the evidence presented below regarding the insurance adjusters' actions. But Colacurcio did not present any evidence to the contrary below. We deny counsel's request to have this matter remanded in order to submit evidence to demonstrate that the adjusters' allegations are false. Had counsel wished to present such evidence, he should have done so below. We, therefore, do not consider the allegations of counsel in Colacurcio's brief that are wholly unsupported by the record. *See, e.g.*, Br. of Appellant at 18-19, wherein counsel recites various facts regarding his communications with the insurance company that are not contained in the record.

issue of whether the actions of Burger's agents constituted an appearance for CR 55 purposes.

While some actions may be insufficient as a matter of law to constitute an appearance, the question of whether actions are sufficient to constitute an informal appearance will generally be a question of fact to be determined by the trial court. In reviewing such a determination, we will not substitute our judgment for that of the trial court. The trial court did not abuse its discretion in determining that Burger was entitled to notice of the motion for default.[2]

Because Colacurcio did not provide Burger with notice, the default order and the subsequent default judgment were void. *In re Marriage of Daley*, 77 Wn. App. 29, 888 P.2d 1194 (1994). *See also Tiffin v. Hendricks*, 44 Wn.2d 837, 847, 271 P.2d 683 (1954) (holding that a party who did not receive the required notice prior to entry of default is entitled to vacation of default judgment "as a matter of right"); *Shreve v. Chamberlin*, 66 Wn. App. 728, 731, 832 P.2d 1355 (1992) (because defendant had informally appeared, trial court was required to grant defendant's motion to vacate). Because the default order and default judgment were void, the trial court was required to grant Burger's motion to vacate.

Because the default order and default judgment were void, we need not decide whether Burger's motion to vacate was brought within a reasonable time, and whether Burger had a defense to the claim for damages. *See, e.g., Allstate Ins. Co. v. Khani*, 75 Wn. App. 317, 877 P.2d 724 (1994) (holding that the court has a nondiscretionary duty to vacate a void judgment, and judgment must be vacated regardless of the lapse of time); *Leen v. Demopolis*, 62 Wn. App. 473, 477-78, 815 P.2d 269 (1991) (if a judgment is void,

---

[2] Burger argues that the insurance company was entitled to notice of the lawsuit and/or motion for default. This argument has been specifically rejected in Washington. *See, e.g., Caouette v. Martinez*, 71 Wn. App. 69, 856 P.2d 725 (1993) (holding that the trial court abuses its discretion when it vacates a default judgment on the grounds that the plaintiff failed to notify the defendant's insurance company of the motion for default). Because the insurance company is not a party to the suit, it was not entitled to notice.

no showing of a meritorious defense is required to vacate the judgment).

Because of its resolution of this matter, the trial court did not enter findings as to whether Burger had demonstrated that service was improper by clear and convincing evidence. Because we affirm on the grounds set forth by the trial court, we decline to reach the parties' arguments as to whether service was proper.

Affirmed.

AGID, C.J., and SCHINDLER, J., concur.

Reconsideration denied May 3, 2002.