77 P.3d 658 (2003)
PROFESSIONAL MARINE COMPANY, Albany Insurance Company, Fireman's Fund Insurance Company, Lorraine Johnson, Respondent.
v.
THOSE CERTAIN UNDERWRITERS AT LLOYD'S, London, each for his/her own part and not for one another, severally subscribing Policy No. VM0000122-00, Defendant/Respondent.
No. 50804-1-I.
Court of Appeals of Washington, Division 1.
October 13, 2003.
*660 Jerret E. Sale, Deborah Carstens, Thomas Dean Adams, Seattle, WA, for Appellant.
M.A. Michelle Buhler, Randall Thomsen, Stuart P. Kastner, Montgomery Purdue Blankinship & Austin, Seattle, WA, for Respondent.
*659 SCHINDLER, J.
The trial court denied insurer Underwriters at Lloyd's (Lloyd's) motion to vacate a default judgment entered against it in favor of its insured, Professional Marine Company (PMC). Lloyd's appeals the trial court's decision and argues that Lloyd's is not a legal entity and cannot be sued, service was improper, and because it had informally appeared, the judgment must be set aside. Lloyd's also challenges the trial court's award of attorney fees. PMC's complaint was consistent with the insurance policy and gave sufficient notice of the lawsuit to the underwriters. PMC also served Lloyd's in accordance with the policy. The trial court did not abuse its discretion in concluding that Lloyd's had not informally appeared in the declaratory judgment and damages lawsuit brought by PMC. And the trial court properly awarded fees under Olympic Steamship Co. v. Centennial Ins. Co., 117 Wash.2d 37, 811 P.2d 673 (1991) and Washington's Consumer Protection Act (CPA), RCW 19.86 et seq. We affirm.

*661 FACTS

PMC owns and operates a boat yard at the north end of Lake Union in Seattle. In February 1999, PMC agreed to do repair work on two yachts, the M/V Northern Lights and the M/V Vincent B. Both vessels were moored at PMC's boat yard; one was docked underneath a satellite shelter that was attached to the dock and the other was adjacent to the shelter. Early in the morning of March 3, 1999, a severe windstorm ripped the shelter away from the dock and its foundation, causing damage to both vessels.
PMC was insured under a marina policy by Lloyd's.[1] On the day of the storm, PMC notified its insurance broker of the damages. The broker sent PMC a letter confirming that the reported loss had been "forwarded to the insurance carrier."[2]
On March 17, Elliston Inc., the claims management company for Lloyd's, advised PMC that it had received and was investigating the damage claims. On March 24, Elliston wrote PMC that:
Our investigation has determined the cause of this loss was the extreme force of the windstorm. It does not appear your company is legally liable for the damages.[[3]]
In this letter, Elliston also told PMC that it had talked to an adjuster from Fireman's Fund Insurance Co. (Fireman's Fund) to discuss the damages to the M/V Northern Lights. Elliston said its investigation was continuing and requested some additional information from PMC.
A couple of weeks later, Elliston's agent informed the owner of the M/V Northern Lights, Lorraine Johnson, and Albany Insurance (Albany), the insurer of the M/V Vincent B., that PMC was not liable for the damage to the vessels caused by the windstorm.
Fireman's Fund and Albany paid for the repairs to the damaged vessels and, in July 1999, demanded reimbursement from PMC. PMC immediately submitted these claims to Elliston. On August 3, 1999, an Elliston claims adjuster wrote to PMC to explain that it had offered Fireman's Fund the per vessel policy limit of $10,000 to settle the claim, but the offer was rejected. Elliston also told PMC that Fireman's Fund intended to sue PMC for the repairs and that Lloyd's did not intend to defend PMC in that lawsuit:
Underwriters provide coverage for damages to property of others under Section II of your policy. Underwriters do not have any right or duty to defend any suit against you under Section II, for damage to property of others in your care, custody and control. Your policy does cover you for legal costs or fees incurred in the defense of a claim covered under Section II, but payment of any such expenses will reduce your $10,000 limit of liability accordingly. Therefore, any combination of legal costs or [judgment] against you in excess of $10,000 will be your personal/corporate financial responsibility.[[4]]
Elliston asked PMC to send copies of Fireman's Fund's civil complaint when it was served on PMC.
On August 4, 1999, Fireman's Fund and Johnson sued PMC for the costs to repair the M/V Northern Lights (King County Superior Court Cause No. 99-2-18351-7 SEA).[5]
On September 8, 1999, PMC sent a letter to Elliston tendering defense of this lawsuit and stating its position that Lloyd's was obligated under the policy to defend. PMC said that if Lloyd's did not respond within five days and agree to defend, PMC would "immediately commence a lawsuit seeking a declaration from the court that Underwriters has a duty to defend."[6]
When PMC did not receive a response, it sent another demand letter on October 13, stating that if Lloyd's did not respond to its *662 demand for defense within two days, PMC would file suit.
On October 15, Elliston responded on behalf of Lloyd's. According to Elliston, the policy did not impose a duty to defend or indemnify PMC in the lawsuit filed against it beyond the $10,000 policy limit Fireman's Fund had rejected. Elliston asserted that its coverage was excess to amounts paid by other insurance.[7] Elliston also asked PMC to forward "any other information or documentation" that had not been provided "because such information could have an impact" on its "analysis and conclusions."[8]
On January 7, 2000, PMC filed a "Complaint for Declaratory Relief and Damages" against Lloyd's (King County Cause No. 00-2-0027108 SEA).[9] PMC requested a declaratory judgment that Lloyd's was obligated to defend and indemnify PMC in the lawsuit filed against it by Fireman's Fund and Johnson. The complaint also alleged that Lloyd's breached its contract with PMC, breached its duty of good faith and fair dealing, and violated the CPA.
On January 17, 2000, PMC served the summons and complaint on the agent identified in the marina policy, Mendes and Mount, a law firm in New York.
When Lloyd's did not answer or respond to the complaint, PMC filed a motion for default. On March 28, 2000, the trial court entered an order of default.[10]
In September 2000, PMC moved for entry of the default judgment. PMC argued that the policy should be construed to provide coverage to PMC for the claims made by Fireman's Fund, Johnson and Albany and that Lloyd's had a duty to defend. PMC also requested attorney fees on the grounds that Lloyd's had misrepresented the policy provisions in violation of the CPA and because it had been forced to litigate in order to obtain coverage.[11] In support of its motion, PMC submitted an affidavit in support of out-of-state service, the insurance policy and correspondence with its insurance broker and with Elliston.
On September 18, 2000, the trial court entered a default judgment against Lloyd's together with findings of fact and conclusions of law.[12] The court concluded that Lloyd's policy provided coverage for PMC's liability to Fireman's Fund, Johnson and Albany and that Lloyd[']s had "an absolute duty to defend Professional Marine in the Lawsuit, at Underwriters' sole cost and expense."[13] The court also concluded that Lloyd's violated the Washington Administrative Code's Fair Claims Settlement Regulations and that PMC was entitled to attorney fees under Olympic Steamship and the CPA.[14]
On February 1, 2001, Fireman's Fund, Albany and Johnson (collectively "Fireman's Fund") and PMC entered into an "Assignment Agreement and Covenant Not to Execute".[15] PMC assigned all rights and interests under the marina policy with Lloyd's to Fireman's Fund.[16] PMC also stipulated to judgment against it in the amount of $199,789.54 plus costs and attorney fees incurred by Fireman's Fund and the parties agreed that payment "shall be made solely from funds recovered from Underwriters at *663 Lloyd's of London."[17] The parties agreed "not to execute" on the judgment entered against PMC, that no party would "attempt to collect any judgment ... before September 19, 2001," and that before any party made an attempt to collect on the judgment, it would notify all other parties.[18]
In May 2001, a "Confession of Judgment by Defendant Professional Marine Company" for $199,789.54 was entered.[19] The judgment against PMC included repair costs incurred by Fireman's Fund, Albany, and Johnson, prejudgment interest, and attorney fees.
On September 28, 2001, Fireman's Fund notified Lloyd's of the assignment and demanded payment for the judgment entered against PMC.[20]
In January 2002,[21] Lloyd's filed a motion to vacate the September 2000 default judgment and made two arguments: (1) that under CR 60 the judgment was void and unenforceable because it was entered against a non-legal entity and (2) that it was entitled to notice of the motion for default under CR 55(c) because it had informally appeared in the action.[22]
The trial court denied Lloyd's motion to vacate. The court concluded that it had jurisdiction over Lloyd's and the default judgment entered against Lloyd's was not unenforceable or void. The court also concluded that Lloyd's had not informally appeared in PMC's lawsuit against it and was not entitled to notice of the default motion.
Lloyd's moved for reconsideration and for the first time, argued that "PMC may have failed to properly serve summons and complaint."[23] Lloyd's also claimed that the court erred in determining that it had not informally appeared. The trial court denied the motion for reconsideration.
Fireman's Fund then filed a motion for an award of attorney fees and costs under the CPA and Olympic Steamship for opposing the motion to vacate. PMC joined in the motion. The trial court awarded PMC, Fireman's Fund and Albany attorney fees of approximately $16,000. Lloyd's appeals.

JURISDICTION
PMC's complaint names "Underwriters at Lloyd's" rather than the specific individuals or corporations underwriting PMC's policy. Lloyd's asserts that because the association known as "Lloyd's of London" or "Underwriters at Lloyd's" is not a corporation and is a non-legal entity, it cannot be sued. Lloyd's claims that the trial court lacked personal jurisdiction and the judgment is therefore, unenforceable and void.[24]
The trial court rejected this argument based on the express provisions of the insurance policy, RCW 48.05.215, authorizing suit against out of state insurers, and because:
[t]he body of the complaint, the caption, and the service of the complaint provide sufficient notice to the appropriate parties of the pendency of the lawsuit. Nothing in this Order shall prejudice Plaintiff's or *664 Plaintiff-Intervenors' rights to amend the caption ...[25]
A judgment is void when the court lacks jurisdiction over the parties or the subject matter or lacks the inherent power to enter the order involved. State v. Petersen, 16 Wash.App. 77, 79, 553 P.2d 1110 (1976) (citing Bresolin v. Morris, 86 Wash.2d 241, 543 P.2d 325 (1975)). Thus, where a trial court lacks personal jurisdiction, a default order and judgment are void and must be set aside. Vukich v. Anderson, 97 Wash.App. 684, 691, 985 P.2d 952 (1999) (insufficiency of substitute service resulted in lack of personal jurisdiction); Allstate Ins. Co. v. Khani, 75 Wash.App. 317, 323, 877 P.2d 724 (1994) (where default judgment is void for lack of personal jurisdiction, court has a nondiscretionary duty to vacate).
In support of its argument on appeal, Lloyd's primarily relies on a Georgia appellate court case decided in 1959, Underwriters at Lloyd's, London v. Strickland, 99 Ga.App. 89, 107 S.E.2d 860 (1959).[26] In Strickland, an insured brought an action against "Underwriters at Lloyd's of London." The insurance policy in Strickland included a provision that the policy was underwritten by individual underwriters and the names and the percentages underwritten by them were on file with the agency issuing the policy and at a London office. Strickland, 99 Ga.App. at 91, 107 S.E.2d 860. Because the complaint named Lloyd's, and not the individual underwriters, the court concluded that the trial court erred in overruling the defendant's objection to the complaint. Strickland, 99 Ga.App. at 92, 107 S.E.2d 860.
The insurance policy in Strickland differs significantly from the policy Lloyd's issued to PMC. In Strickland, the policy put the insured on notice that the insurer was not Lloyd's, but particular underwriters. The policy specified two locations where the names of the individual underwriters could be obtained. Here, the caption and PMC's complaint conforms to the information provided in the insurance policy with PMC written by Lloyd's. The policy identifies the insurer as "Underwriters at Lloyd's of London" and refers to Lloyd's throughout as "the Company."[27] The policy provides no notice or information about the identities of the individual underwriters.[28] Moreover, the caption in this lawsuit is consistent with numerous cases, cited by Fireman's Fund, in which Lloyd's has been sued without naming the specific underwriters of the policies involved.[29]
The trial court's order denying the motion to vacate also specifically allows PMC to seek an amendment of the caption. In Washington, when a party is incorrectly named in a lawsuit, dismissal is not the automatic remedy; rather the primary consideration is whether the party has been prejudiced. See In re Marriage of Morrison, 26 Wash.App. 571, 573-74, 613 P.2d 557 (1980) (if the misnaming of a party has not caused prejudice, the parties should be given an opportunity to amend the complaint).
The caption, body and service of the complaint sufficiently identify the defendant. Although the caption does not name the particular underwriters, PMC's complaint gives sufficient notice to the underwriters by identifying the policy number, type of policy, policy dates, and the insured. Because the caption of the lawsuit is consistent with the information contained in the policy, the trial court did not err in concluding that it had jurisdiction and denying the motion to vacate.
The trial court also concluded that it had jurisdiction over Lloyd's under RCW *665 48.05.215(1), which provides that any foreign insurer that solicits or transacts business in Washington "thereby submits itself to the jurisdiction of the courts of this state in any action." Lloyd's does not challenge this conclusion in its appeal.

SERVICE
Alternatively, Lloyd's argues that the judgment against it is void because PMC did not properly serve Lloyd's with the summons and complaint.
"`Proper service of the summons and complaint is essential to invoke personal jurisdiction over a party, and a default judgment entered without proper jurisdiction is void.'" Khani, 75 Wash.App. at 324, 877 P.2d 724 (quoting In re Marriage of Markowski, 50 Wash.App. 633, 635-36, 749 P.2d 754 (1988)); Mid-City Materials, Inc. v. Heater Beaters Custom Fireplaces, 36 Wash.App. 480, 486, 674 P.2d 1271 (1984) (proper service of the summons and complaint is essential to invoke personal jurisdiction over a party; default judgment entered without proper jurisdiction is void).
The Lloyd's policy with PMC states:
It is further agreed that service of process in such suit may be made upon:
Mendes and Mount
750 Seventh Ave.
New York, New York 10019[30]
On January 17, 2000, PMC served Mendes and Mount with a copy of the summons and complaint. According to the out of state declaration of service, the summons and complaint were accepted by an employee, Melanie Crooke, "Managing Agent."[31]
Lloyd's first raised the issue of service in its motion for reconsideration. Lloyd's explained that the reason the issue was not raised in its initial motion was that Lloyd's was only recently able to locate Melanie Crooke. In Crooke's declaration, submitted with the motion for reconsideration,[32] she states that she has no recollection of accepting service of process, does not believe she would have accepted service because it was contrary to office policy, and never used the title "Managing Agent," as recorded on the declaration of service.[33]
The trial court denied the motion for reconsideration.[34]
We reject Lloyd's argument that service was improper. Service of the summons and complaint conformed to the express provisions of the insurance agreement which provided for service on Mendes and Mount. Even assuming Cooke's declaration was newly discovered evidence, it does not alter the provisions of the insurance policy. And although it could have done so, Lloyd's did not designate particular employees to accept service in its policy. Policy language is strictly construed against the insurer as the drafter of the contractual language. Findlay v. United Pac. Ins. Co., 129 Wash.2d 368, 374, 917 P.2d 116 (1996); McDonald v. State Farm Fire & Cas. Co., 119 Wash.2d 724, 733, 837 P.2d 1000 (1992); Queen City Farms v. Central Nat'l Ins., 126 Wash.2d 50, 81, 882 P.2d 703 (1994).
The authority cited by Lloyd's does not lead to a different result. None of the cases it cites involve similar contractual provisions for service. In French v. Gabriel, 57 Wash.App. 217, 788 P.2d 569 (1990), the court concluded that an individual may not be served by serving an employee of that person.
*666 This is entirely different from the facts here. The other cases cited by Lloyd's are not applicable because they pertain to compliance with specific service statutes. See Nitardy v. Snohomish County, 105 Wash.2d 133, 134, 712 P.2d 296 (1986); Landreville v. Shoreline Community College, 53 Wash.App. 330, 331, 766 P.2d 1107 (1988).
Because Lloyd's designated Mendes and Mount to receive service, and service was in accordance with the policy, the trial court had jurisdiction.

LACK OF APPEARANCE
Lloyd's claims that the trial court abused its discretion in concluding that it failed to appear in PMC's lawsuit and therefore, was not entitled to notice of the motion for default.
CR 55(a)(3) provides that if a party has "appeared" before the motion for default has been filed, he or she is entitled to notice of the motion for default. If a defendant who has appeared in an action is not given proper notice prior to entry of the order of default, the defendant is entitled to vacation of the default judgment as a matter of right. Shreve v. Chamberlin, 66 Wash.App. 728, 832 P.2d 1355 (1992).
Ordinarily, a party "appears" in an action when it "answers, demurs, makes any application for an order therein, or gives the plaintiff written notice of his appearance." RCW 4.28.210. But the methods set forth in RCW 4.28.210 are not exclusive, and informal acts may also constitute an appearance. Skilcraft Fiberglass, Inc. v. Boeing Co., 72 Wash.App. 40, 45, 863 P.2d 573 (1993).
We review the trial court's determination of whether a party has informally appeared for an abuse of discretion. Batterman v. Red Lion Hotels, Inc., 106 Wash.App. 54, 59, 21 P.3d 1174, 1177 (2001). Whether a party has appeared is generally a "question of intention, as evidenced by acts or conduct, such as the indication of a purpose to defend or a request for affirmative action from the court, constituting a submission to the court's jurisdiction.'" Gage v. Boeing Co., 55 Wash.App. 157, 161, 776 P.2d 991 (1989). This court will not disturb the trial court's decision unless it was manifestly unreasonable, based on untenable grounds or untenable reasons. Hwang v. McMahill, 103 Wash.App. 945, 949-50, 15 P.3d 172 (2000), rev. denied, 144 Wash.2d 1011, 31 P.3d 1185 (2001).
Relying on this court's decision in Batterman and Division Three's recent decision in Ellison v. Process Systems Inc., 112 Wash.App. 636, 50 P.3d 658 (2002), review denied, 148 Wash.2d 1021, 66 P.3d 637 (2003). Lloyd's argues that the trial court abused its discretion in concluding that Elliston's letter, in response to PMC's tender of defense for the lawsuit filed against it by Fireman's Fund, did not constitute an informal appearance in the lawsuit PMC subsequently filed against Lloyd's.
The trial court concluded that Lloyd's contacts with PMC, Fireman's Fund, Johnson and Albany did not amount to an informal appearance. The court noted that apart from Elliston's letter of October 15, 1999, in response to PMC's tender of defense, all of the contacts between PMC and Elliston related to the claims against PMC, and not to PMC's claims against Lloyd's. The court concluded that the October 15 communication did not "manifest an intent to defend" against PMC's lawsuit it had not yet filed.[35]
In Batterman, this court concluded that the trial court did not abuse its discretion in setting aside a default judgment where there had been numerous and frequent contacts regarding settlement of the plaintiff's claim both before and after the complaint was filed. Batterman, 106 Wash.App. at 58, 21 P.3d 1174.
In Ellison, the plaintiff's attorney contacted her employer's attorney about her claim for wrongful discharge and sexual harassment, and asked that Ellison be reinstated with back pay. The employer's attorney responded that Ellison had been terminated for misconduct, and not for any reason related to sexual harassment. However, the employer agreed to investigate the allegation and asked for some additional information. The *667 employer's attorney later wrote another letter stating that the employer had taken "remedial action." Ellison, 112 Wash.App. at 639, 50 P.3d 658. Ellison filed a lawsuit against the employer two months later. Because the employer did not file an answer or otherwise take any action regarding the lawsuit, the trial court entered an order of default and a default judgment in the amount of $177,874.56.
More than two years after the judgment was entered, the employer moved to vacate the judgment. In the motion to vacate the employer's attorney stated that Ellison's attorney had never mentioned the lawsuit or the motion for default despite the fact that they had ongoing frequent contact over several years in another employment case. The trial court granted the motion to vacate the default judgment. The appellate court affirmed and held that the trial court's decision to set aside the default judgment was not an abuse of discretion.[36]
Neither of the cases Lloyd's relies on establishes that, as a matter of law, certain conduct amounts to an informal appearance. Rather, the decisions in Batterman and Ellison hold that the trial court did not abuse its discretion in finding that the defendant appeared. Here, conversely, the trial court did not abuse its discretion in finding that Lloyd's had not appeared. Determinations of when a party has or has not made an informal appearance are dependant on the specific facts of each case and will rarely be susceptible to determination as a matter of law:
While some actions may be insufficient as a matter of law to constitute an appearance, the question of whether actions are sufficient to constitute an informal appearance will generally be a question of fact to be determined by the trial court. In reviewing such a determination, we will not substitute our judgment for that of the trial court.
Colacurcio v. Burger, 110 Wash.App. 488, 497, 41 P.3d 506 (2002), rev. denied, 148 Wash.2d 1003, 60 P.3d 1211 (2003) (concluding that the trial court did not abuse its discretion in finding an informal appearance where the defendant's insurance carrier had extensive contact with the plaintiff's attorney both before and after the lawsuit was filed).
In this case, the trial court found that except for the letter of October 15, all of Elliston's contacts with PMC related to the third-party claims against PMC, not PMC's claims against Lloyd's. And the court concluded that Lloyd's single letter in response to PMC's tender of defense was insufficient to indicate an intent to defend against the lawsuit PMC intended to bring. Elliston's October 15 letter did not refer to PMC's lawsuit that it indicated it would file if Lloyd's did not agree to defend, nor did it request any additional information or a copy of PMC's complaint when it was filed. The trial court's decision rests on tenable grounds and the court did not abuse its discretion in concluding that Lloyd's did not informally appear in the action, and was therefore, not entitled to notice of the motion for default.

ATTORNEY FEES
The trial court awarded attorney fees under Olympic Steamship Co. v. Centennial Ins. Co., 117 Wash.2d 37, 811 P.2d 673 (1991) and the CPA to PMC and Fireman's Fund for costs incurred in opposing Lloyd's motion to vacate.
Lloyd's asserts that the plaintiffs were not entitled, as a matter of law, to an award of attorney fees because neither coverage nor claims handling practices were at issue in the motion to vacate.
Under Olympic Steamship, attorney fees are awarded whenever the insured must litigate to obtain or preserve policy benefits.
Whether the insured must defend a suit filed by third parties, appear in a declaratory action, or as in this case, file a suit for *668 damages to obtain the benefit of its insurance contract is irrelevant.
... [W]e believe that an award of fees is required in any legal action where the insurer compels the insured to assume the burden of legal action ...
Olympic Steamship, 117 Wash.2d at 52-53, 811 P.2d 673.
In the default judgment Fireman's Fund and PMC obtained a declaration that the policy provided coverage and that Lloyd's had a duty to defend. Lloyd's does not address the broad language of Olympic Steamship. Nor does it cite any authority or fully explain why opposing a motion to vacate is not encompassed within this language. Because neither Olympic Steamship nor subsequent caselaw suggest that distinctions should be made based on the type of motion or the specific legal issues raised, we reject Lloyd's argument that Olympic Steamship does not provide a basis for an award of fees.[37]
Lloyd's argues that even if an attorney fee award is appropriate, PMC and Fireman's Fund are not both entitled to fees because PMC no longer has any interest in the judgment based on the assignment agreement and duplicative and duplicative briefing was unnecessary. But Lloyd's cites no authority in support of its argument and under the terms of the assignment agreement, PMC retained an interest in the judgment.
The trial court did not err in awarding attorney fees and the respondents are entitled to fees on appeal under Olympic Steamship and RAP 18.1.
WE CONCUR: COX and BECKER, JJ.
NOTES
[1] The policy. No. VM0000122-00, was in effect between August 2, 1998 and August 2, 1999.
[2] Clerk's Papers (CP) at 81.
[3] CP at 83.
[4] CP at 88.
[5] About eight months after the suit was filed, in April 2000, Albany intervened in the lawsuit.
[6] CP at 173.
[7] CP at 179.
[8] CP at 180.
[9] CP at 511. On September 5, 2000, PMC filed an amended complaint which contained additional facts pertaining to the M/V Vincent B. after Albany intervened in the lawsuit in the spring of 2000.
[10] Neither the order of default, nor the motion for the entry of default are included in the record on appeal.
[11] CP at 89.
[12] CP at 108. The default judgment was for approximately $25,000, which included fees incurred by PMC in the lawsuit brought by Fireman's Fund and Johnson, plus fees incurred in bringing suit against Lloyd's.
[13] CP at 106.
[14] CP at 107.
[15] CP at 115.
[16] PMC assigned all its rights to the default judgment entered against Lloyd's "except for that portion of the judgment" that "relates to attorneys' fees and expenses incurred by [PMC] prior to the date of this Agreement in connection with the defense of the Lawsuit and in pursuing the Underwriter's Lawsuit." CP at 116.
[17] CP at 115. Under this agreement, PMC was explicitly not obligated to pay any amount beyond the funds, if any, received from Lloyd's.
[18] CP at 116.
[19] CP at 124.
[20] CP at 136-38.
[21] CP at 188. This was an amended motion to vacate. The original motion is not in the record, and it is not clear when it was filed.
[22] In its motion, Lloyd's also claimed that neither Elliston nor Lloyd's had notice of PMC's lawsuit until it received demand for payment in the fall of 2001 and asserted that it had viable defenses to PMC's action.
[23] CP at 446.
[24] The entity commonly known as Lloyd's of London has been described as follows:

The Lloyd's group is not a legal entity; rather, there is a building in London known as Lloyd's where individual underwriters, grouped together in syndicates, accept insurance risks from a group of brokers called the Lloyd's brokers. Each underwriting syndicate may be composed of as many as 200 to 300 underwriting members ... The day-to-day affairs of each syndicate are conducted by an underwriter who has the authority to act for and bind the syndicate.
Honey v. George Hyman Construction Co., 63 F.D.R. 443, 446 (D.D.C.1974).
[25] CP at 375.
[26] The other cases cited by Lloyd's cite general language about the non-legal or non-corporate statute of Lloyd's of London. They do not address the issue of the status of a judgment against Lloyd's. See e.g. Allendale Mut. Ins. Co. v. Excess Ins. Co., 62 F.Supp.2d 1116, 1121 (S.D.N.Y. 1999); Honey, 63 F.R.D. at 446.
[27] CP at 40, 45.
[28] We further note that not only is Strickland different from this case, it has not been followed by more recent caselaw involving suits against the association, Lloyd's of London, and has been cited only twice, both times by the Georgia Court of Appeals.
[29] Fireman's Fund attaches a comprehensive list of cases as an appendix to its brief.
[30] CP at 77.
[31] CP at 520. Although the date of service was a federal holiday, Crooke was working that day.
[32] Lloyd's also submitted the declaration of Michael Karson, a claims manager for Elliston, who explains that normally when Mendes and Mount is served with a complaint, it forwards the documents to Elliston who then retains counsel to defend Lloyd's.

We grant the respondents' motion to strike Karson's declaration and do not consider it, because Lloyd's provides no reason that his declaration could not have been obtained earlier. See CR 59(a)(4) (newly discovered evidence which could not have been obtained earlier with "reasonable diligence" may be grounds for reconsideration).
[33] CP at 451.
[34] The court denied Lloyd's motion without requesting a response from PMC and Fireman's Fund under KCLR 7(b)(5)(B).
[35] CP at 374
[36] The appellate court disagreed with Ellison's argument that the employer could not have appeared because the employer's letters were written before the lawsuit was filed; noting that in Gage v. Boeing, the conduct which amounted to an appearance was Boeing's defense of the employee's administrative claim before the Board of Industrial Insurance Appeals before the suit was filed. Ellison, 112 Wash.App. at 644, 50 P.3d 658.
[37] Although Lloyd's asserts that fees were also improperly awarded under the CPA, it does not provide any argument or authority to support its assertion. Therefore, we do not address this issue. See RAP 10.3(a)(5); City of Bremerton v. Sesko, 100 Wash.App. 158, 162, 995 P.2d 1257 (2000).