[No. 30488-1-II.   Division Two.   April 19, 2005.]

CALEB SMITH, *Respondent*, v. BEVERLY ARNOLD ET AL.,
*Petitioners.*

---

[1] Also Spokane, Garfield, Columbia, and Asotin Counties.

*Thomas L. Schwanz* (of *Snook & Schwanz*) and *Marilee C. Erickson* (of *Reed McClure*), for petitioners.

*Mark W. Watson*, for respondent.

¶1 QUINN-BRINTNALL, C.J. — Beverly and Marvin Arnold appeal the superior court's order denying their motion to vacate an order of default in the personal injury suit against them. The Arnolds did not receive notice of the motion for an entry of default because they had not filed a notice of appearance. Nevertheless, they maintain that they were entitled to notice because they had "informally" appeared in the lawsuit through their out-of-court contacts with the plaintiff. Alternatively, the Arnolds argue that the default order should have been vacated under CR 55 because their failure to appear was the result of excusable neglect and they exercised due diligence in seeking to have the order set aside. We affirm.

## FACTS

¶2 On October 3, 1997, while in Oregon, Beverly Arnold was involved in a single-car accident. At that time, the Arnolds were insured by Allstate Insurance Company. After the accident, Allstate settled lawsuits brought by three of the passengers in Beverly Arnold's vehicle. A fourth passenger in the vehicle, Caleb Smith, the Arnolds' grandson, did not file a lawsuit.

¶3 Allstate sent letters to Smith after the accident indicating that he was likely covered under the Arnolds' personal injury protection (PIP) coverage. These letters informed Smith of the claims adjuster responsible for handling any PIP claim. In 2000 and 2001, Allstate received Smith's medical bills and demands for payment pursuant to

the PIP coverage. In June 2001, Allstate wrote Smith explaining that a new claims adjuster had been assigned to the PIP claim. The letter also asked about the timeliness of Smith's treatment and submission of bills.

¶4 On May 20, 2002, Smith sent a settlement demand letter to Allstate in which he alleged that the accident was due to Beverly Arnold's negligence. In June 2002, Allstate called Smith to "discuss the claim" and the Oregon statute of limitations, which Allstate concluded would expire in October of that year. Clerk's Papers (CP) at 28. In August 2002, Allstate sent Smith a settlement offer.[1] Smith did not respond to the offer.

¶5 On October 1, 2002, Smith sued the Arnolds for negligence. Although they were properly served three days later, the Arnolds did not notify Allstate of the suit because Beverly Arnold was ill and the suit "was quite low on [their] list of priorities at the time." CP at 23. According to the Arnolds, they were not aware that they needed to forward the summons and complaint to their insurance company.

¶6 On November 20, 2002, Allstate received a copy of the summons and complaint from Smith's counsel.[2] But the claims adjuster for the case was on vacation from November 23 to December 2 and did not review the documents until December 10. At that time, the claims adjuster contacted Smith's counsel, leaving a message inquiring about the case and whether a default order had been obtained. The parties dispute whether Smith's attorney responded to the message. After leaving the message, the claims adjuster also contacted Allstate's counsel and informed him that a notice of appearance should be filed.

¶7 No further communications between the parties occurred, and Smith obtained an order of default on December 20, 2002. Allstate's counsel filed a notice of appearance seven days later. On January 26, 2003, the Arnolds sent a

---

[1] This letter is not part of the record.

[2] According to Smith's counsel, these copies were sent as a matter of courtesy and to avoid an inference that Smith and the Arnolds had colluded to defraud Allstate.

letter to Smith requesting that the default order be set aside. That request was rejected.

¶8 On March 25, 2003, the Arnolds filed a motion to vacate the default order. They maintained that they had informally appeared in the lawsuit and that they were therefore entitled to notice of the motion for an entry of default. The superior court denied the motion, concluding that Allstate had not shown an intent to defend the lawsuit when it failed to promptly file a notice of appearance after it had reviewed the summons and complaint on December 10.

¶9 This court subsequently accepted the Arnolds' motion for discretionary review.

## ANALYSIS

¶10 In Washington, " '[i]t is the policy of the law that controversies be determined on the merits rather than by default.' " *Griggs v. Averbeck Realty, Inc.*, 92 Wn.2d 576, 581, 599 P.2d 1289 (1979) (alteration in original) (quoting *Dlouhy v. Dlouhy*, 55 Wn.2d 718, 721, 349 P.2d 1073 (1960)). Relying on the disfavored status of default orders and judgments, the Arnolds present two arguments for why the default order in this case should have been vacated. First, they contend that while they did not file a formal appearance in the lawsuit, they "informally" appeared and were, therefore, entitled to notice of the default hearing. Alternatively, they maintain that the default order should have been set aside because their failure to appear resulted from excusable neglect and they diligently sought to have the default order set aside once they knew of it.

INFORMAL APPEARANCE

¶11 If a party has "appeared" before a motion for default has been filed, that party is entitled to notice of the motion before the trial court may enter a valid default order. CR 55(a)(3). A party "appears" in an action when the party " 'answers, demurs, makes any application for an

order therein, or gives the plaintiff written notice of his appearance.'" *Shreve v. Chamberlin*, 66 Wn. App. 728, 732, 832 P.2d 1355 (1992) (quoting RCW 4.28.210), *review denied*, 120 Wn.2d 1029 (1993)).

¶12 But these methods are not exclusive. "Informal" acts have also been held to constitute an "appearance." *Prof'l Marine Co. v. Underwriters at Lloyd's*, 118 Wn. App. 694, 708, 77 P.3d 658 (2003); *Gage v. Boeing Co.*, 55 Wn. App. 157, 162, 776 P.2d 991, *review denied*, 113 Wn.2d 1028 (1989). Whether a party has "appeared" informally is generally a "question 'of intention, as evidenced by acts or conduct, such as the indication of a purpose to defend or a request for affirmative action from the court, constituting a submission to the court's jurisdiction.'" *Gage*, 55 Wn. App. at 161 (quoting Annotation, *What Amounts to "Appearance" Under Statute or Rule Requiring Notice, to Party Who Has "Appeared," of Intention To Take Default Judgment*, 73 A.L.R. 3d 1250, 1254 (1976)). A party will not be considered to have appeared informally if the plaintiff could reasonably harbor illusions about whether the party intended to defend the matter. *Wilson v. Moore & Assocs., Inc.*, 564 F.2d 366, 369 (9th Cir. 1977); *Gage*, 55 Wn. App. at 162.

¶13 With that said, the standard governing appellate review of a trial court's resolution of an informal-appearance issue is not well settled. Divisions One and Three of this court have stated that a trial court's determination of whether a party has informally appeared is reviewed for an abuse of discretion. *See Prof'l Marine Co.*, 118 Wn. App. at 708; *Ellison v. Process Sys. Inc. Constr. Co.*, 112 Wn. App. 636, 643, 50 P.3d 658 (2002), *review denied*, 148 Wn.2d 1021 (2003); *Batterman v. Red Lion Hotels, Inc.*, 106 Wn. App. 54, 59, 21 P.3d 1174 (2001). But in one case, Division One used language suggesting that an informal appearance ruling is simultaneously reviewed for an abuse of discretion and as a factual finding:

> We review the trial court's determination of whether a party has informally appeared for an abuse of discretion.
>
> . . . .

While some actions may be insufficient as a matter of law to constitute an appearance, the question of whether actions are sufficient to constitute an informal appearance will generally be a question of fact to be determined by the trial court. In reviewing such a determination, we will not substitute our judgment for that of the trial court.

*Colacurcio v. Burger*, 110 Wn. App. 488, 495, 497, 41 P.3d 506 (2002), *review denied*, 148 Wn.2d 1003 (2003).

¶14 Whether a party has or has not appeared is a question of fact the trial court must resolve based on the evidence presented. A party's *formal* appearance is generally evidenced by filing and serving a notice of appearance with the court and on all proper parties. The existence of such documentary evidence is conclusive of the party's appearance and entitlement to notice of further proceedings. Likewise, a trial court's finding that a party has appeared *informally* must also be supported by evidence of actions manifesting an unquestionable intent to appear and defend the matter in court.

¶15 Divisions One and Three's cases are inconsistent with the long-standing rule for reviewing a trial court's factual findings, which is whether the record contains substantial evidence to support the factual findings. *Bang D. Nguyen v. Dep't of Health Med. Quality Assurance Comm'n*, 144 Wn.2d 516, 530, 29 P.3d 689 (2001), *cert. denied*, 535 U.S. 904 (2002). Substantial evidence is evidence sufficient to persuade a fair-minded, rational person of the truth of a declared premise. *Davis v. Microsoft Corp.*, 149 Wn.2d 521, 531, 70 P.3d 126 (2003).

¶16 As a matter of law, a defendant who appears in an action but is not given notice of a plaintiff's intention to seek an order of default is entitled to have any such order vacated. CR 55(a)(3). And even where there is no appearance, we review a court's order for an abuse of discretion when the defendant sought relief from judgment under CR 60 or moved to have the default order vacated for good cause under CR 55(c). *In re Marriage of Scanlon*, 110 Wn. App. 682, 686, 42 P.3d 447, *review denied*, 147 Wn.2d 1024

(2002); *In re Estate of Stevens,* 94 Wn. App. 20, 29, 971 P.2d 58 (1999). But whether a party has appeared, so as to require notice of a motion for a default order, is a question of fact that must be reviewed for substantial evidence. Where a party fails to file a notice of appearance or in some way submit to the trial court's jurisdiction, any finding of an appearance must rest on substantial actions that could leave no reasonable doubt about whether the party intended to defend the matter. In contrast, where we are asked to review a finding that an "informal" appearance has not occurred, there must be substantial evidence to support a finding that the plaintiff reasonably harbored illusions about whether the opposing party intended to defend the matter.

¶17 What establishes sufficient evidence of a manifested intent to defend is unresolved in Washington. Our Supreme Court has found an appearance in a variety of circumstances. *See, e.g., Dlouhy,* 55 Wn.2d at 723-24 (appeared to contest pretrial injunction); *Warnock v. Seattle Times Co.,* 48 Wn.2d 450, 451-52, 294 P.2d 646 (1956) (served a demand to stop court proceedings until bond was filed); *Tiffin v. Hendricks,* 44 Wn.2d 837, 842-43, 271 P.2d 683 (1954) (served notice of appearance on the plaintiff but did not file with the court); *State ex rel. Trickel v. Superior Court of Clallam County,* 52 Wash. 13, 15-16, 100 P. 155 (1909) (served interrogatories on the plaintiff). In each of these cases, the act constituting an "appearance" was highly "formal" because it involved an ordinary step in legal proceedings made after a suit has been filed or service has been made. But our Supreme Court has never addressed whether an "appearance" can occur before the case is filed.

¶18 Our sister divisions have, however, addressed the issue. Division One has held in two different cases that an informal appearance occurred when the defendant repeatedly sought to obtain documentation from the plaintiff for the purpose of negotiating a settlement. *Colacurcio,* 110 Wn. App. at 496-97 (defendant sought documentation for eight months including once after suit was filed);

*Batterman*, 106 Wn. App. at 62-63 (defendant sought documentation for more than a year including time before and after service of process).

¶19 And in *Ellison*, 112 Wn. App. at 643-44, Division Three extended the "informal appearance" doctrine to include findings based solely on acts occurring before a lawsuit was filed or service had been made. In that case, an employee alleged that she had been unlawfully terminated by her employer. *Ellison*, 112 Wn. App. at 639. In two letters sent to the employee, the employer denied the charge, advised that an investigation would take place, and that remedial action had occurred. *Ellison*, 112 Wn. App. at 639. Nevertheless, the employee sued and, when the employer failed to respond, the employee obtained a default judgment. *Ellison*, 112 Wn. App. at 639. That order was set aside because the superior court found that the employer's two letters constituted an informal appearance in the later filed lawsuit. *Ellison*, 112 Wn. App. at 641. Division Three affirmed, concluding that the lower court had not *abused its discretion* in finding that the letters alone evidenced an intent to defend against the employee's claim for wrongful discharge. *Ellison*, 112 Wn. App. at 644.

¶20 We disagree with *Ellison*'s broad definition of when a party has "appeared" in a yet-to-be-commenced lawsuit.[3] Whether a party has "appeared" for purpose of invoking the right to notice is a question of fact that should be narrowly construed.

[I]t is a disservice to the legal system to distort the meaning of a concrete term such as "appearance" in order to provide a mechanism to save a party from a default judgment. Efficient court management and reliability of judicial process is en-

---

[3] The *Ellison* court summarily asserted that Division One had also held that an appearance can be found based solely on presuit acts. *See Ellison*, 112 Wn. App. at 644 (quoting *Gage*, 55 Wn. App. at 160-61). We disagree with that assertion. In *Gage*, Division One held that "vigorously" defending against administrative actions constituted an "appearance" in the subsequent appeal to superior court. 55 Wn. App. at 162. As the *Gage* court noted, "an appeal [of an administrative court's decision] is a *continuation* of 'the action' even though the action was not formally initiated in [the superior] court." 55 Wn. App. at 163 (emphasis added).

hanced by court records which disclose the critical procedural actions of the parties—such as the entry of an appearance.

*Zuelzke Tool & Eng'g Co. v. Anderson Die Castings, Inc.*, 925 F.2d 226, 230 (7th Cir. 1991). Requiring that there be an appearance by communication with the trial court, not the opposing party, "avoids ethical entanglements, misunderstandings, and deception; it crystallizes the circumstances under which there is a default; and it imports a clear meaning to the party to be charged. It has the secondary value of allowing the trial court to have control over its docket rather than the parties." *Rose & Nelson v. Frank*, 25 Kan. App. 2d 22, 26, 956 P.2d 729 (1998).

¶21 In adhering to a narrow meaning of "appearance," we recognize that controversies should be determined on the merits rather than by default orders and judgments. It is this principle that guided Divisions One and Three to broadly define an "appearance." *Ellison*, 112 Wn. App. at 641; *Colacurcio*, 110 Wn. App. at 494. But we note that it is not necessary to read "appearance" broadly to remediate potential injustice. *Zuelzke Tool & Eng'g Co.*, 925 F.2d at 230-31. The trial court retains the authority to set aside a default order under CR 55 if the moving party demonstrates "good cause" by a showing of excusable neglect and due diligence. *Stevens*, 94 Wn. App. at 30. Thus, a party who (1) shows that the failure to timely respond was due to excusable neglect and (2) acts diligently in seeking to set aside the order will not be detrimentally affected by how broadly or narrowly an "appearance" is defined. And if, for example, a defaulted party is lulled or induced into inaction by settlement discussions and forgoes filing an appearance and responsive pleading, relief from judgment may be sought under CR 60(b).

¶22 Moreover, a narrow definition of "appearance" is consistent with the plain and ordinary meaning of the term. "Such an interpretation is consistent with traditional and accepted legal parlance in which 'appearance' is defined as 'a coming into court as a party to a suit, either in person or by an attorney, whether as plaintiff or defendant.' " *Zuelzke*

*Tool & Eng'g Co.*, 925 F.2d at 230 (quoting Black's Law Dictionary 89 (5th ed. 1979)). An interpretation founded on the defendant's conduct after commencement of a lawsuit also is consistent with our Supreme Court's mandate that an "appearance" be found in "action . . . which recognizes the case as *in court.*" *Dlouhy*, 55 Wn.2d at 721 (emphasis added); *accord Turner v. Salvatierra*, 580 F.2d 199, 201 (5th Cir. 1978).

¶23 To hold that CR 55(a)(3) requires notice in a case where all of the contacts between the parties occurred before the suit was filed would open the possibility that notice is required in every case where there is contact between the parties at some point in time. This would not necessarily be a bad thing; the uncertainty of when notice was required under CR 55(a)(3) would provide an incentive for the moving party to give notice in every case. This presumably would reduce the incidence of default orders and judgments and further the goal of having disputes resolved on their merits. The thrust of this position, however, is that notice of a default hearing should always be given to the nonmoving party. But CR 55(a)(3) states that notice of a default hearing is required only if the party "has appeared in the action." It would have been an easy task to draft the rule to specifically state that notice of a default hearing is always required, yet this was not done. The language chosen evidences an intent to impose a notice requirement only in limited circumstances.[4]

¶24 But we decline Smith and the Arnolds' request to demarcate a bright-line rule concerning the sufficiency of actions occurring out of court or before a lawsuit is filed. We acknowledge that in certain situations, the defendant's

---

[4] This court's recent opinion in *Showalter v. Wild Oats*, 124 Wn. App. 506, 101 P.3d 867 (2004) does not change our conclusion that an "appearance" must be narrowly construed. In a footnote to that opinion, the court, citing *Ellison* and *Batterman*, stated that "we broadly define appearance under CR 55." *Showalter*, 124 Wn. App. at 515 n.4. But as the court also noted, an "appearance" requires a clear intent to defend the plaintiff's claims; the court found such an "appearance" by the defendant's settlement negotiations that occurred for numerous months. *Showalter*, 124 Wn. App. at 515 n.4. As explained above, we decline to follow Divisions One and Three's lead in redefining an "appearance."

actions may be so unambiguous as to leave the plaintiff with only one reasonable conclusion: that the defendant has every intention to submit to the trial court's jurisdiction and vigorously defend the matter.[5] But the record does not contain such unequivocal and clear-cut acts by the Arnolds.

¶25 In arguing that they had made an informal appearance, the Arnolds point to Allstate's handling of Smith's PIP claim and settlement agreements with the other passengers in the car. But action taken between an insurer and an insured under a PIP policy is distinct from tort litigation between the insured and a third-party tortfeasor. *See Harris v. Drake*, 152 Wn.2d 480, 99 P.3d 872 (2004) (documents prepared for PIP purposes could be considered work product in subsequent litigation between the insured and the tortfeasor). The Arnolds' policy contractually bound Allstate to cover Smith's PIP claim, and its handling of the claim is separate from a manifested intent to defend any future lawsuit Smith might have brought. *See Prof'l Marine Co.*, 118 Wn. App. at 711 (distinguishing between contacts regarding third-party coverage under an insured's policy and contacts concerning claims between the insured and insurer). As to Allstate's settling of tort claims brought by other passengers, such action did not unambiguously evidence an intent to defend against Smith's claim several years later.

¶26 Nor do Allstate's actions with respect to Smith's tort claim unambiguously convey such an intent. According to the Arnolds and Allstate, these actions were threefold: (1) the claims adjuster's June 20, 2002 phone call to "discuss the claim" and the Oregon statute of limitations; (2) the

---

[5] *Compare Direct Mail Specialists, Inc. v. Eclat Computerized Technologies, Inc.*, 840 F.2d 685, 689 (9th Cir. 1988) (no appearance where defendant complained about having been served and said that he would refer the matter to his attorney), *and Wilson*, 564 F.2d at 369 (no appearance occurred where the defendant sent a letter to the plaintiff which was partially responsive to the complaint but no formal appearance was filed, there were no settlement negotiations, and the defendant ignored warnings from the plaintiff that a default would be taken), *with Muniz v. Vidal*, 739 F.2d 699 (1st Cir. 1984) (defendant appeared where he communicated to the plaintiff about potential defenses and counterclaims and that he would seek an extension to file an answer because he needed time to research complex issues in the case).

settlement offer on August 5, 2002; and (3) the message left with the Arnolds' counsel on December 10, 2002, "regarding the lawsuit and the status of it, particularly whether it was in default." CP at 28-29.

¶27 This court has held that a "phone call can constitute a notice of appearance if the caller is one who could appear for the defendant, the caller recognizes that the case is in court, and the caller manifests an intent to defend." *Seek Sys., Inc. v. Lincoln Moving/Global Van Lines, Inc.*, 63 Wn. App. 266, 270, 818 P.2d 618 (1991) (citations omitted). The June 20 phone call was made before the lawsuit was filed. Moreover, both phone calls were made by a claims adjuster who undisputedly could not file a notice of appearance. *Seek Sys., Inc.*, 63 Wn. App. at 270-71 (call by the defendant's director of customer relations not sufficient). And in neither phone call did the caller state that Allstate and the Arnolds intended to defend any such lawsuit. The discussion on June 20 was, according to Allstate, solely to "discuss the claim" and Oregon's statute of limitations. CP at 28. In the message left on December 10, the claims adjuster did not indicate that any steps would be taken, let alone that she would contact counsel to file a notice of appearance.

¶28 The third basis on which the Arnolds claim an informal appearance is Allstate's settlement offer. "Settlement negotiations may constitute an appearance where the defendant makes plain its intent to defend if the settlement efforts fail." 46 Am. Jur. 2d *Judgments* § 300 (1994); *accord H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689, 692 (D.C. Cir. 1970) (defendant appeared where, after service of the complaint, the parties exchanged letters and held a series of meetings aimed at settlement); *Colacurcio*, 110 Wn. App. at 496. Although the settlement offer is arguably Allstate's strongest evidence of its intention to defend, the superior court considered all the evidence before it and found that a single settlement offer was insufficient to prove an unmistakable intent to defend a lawsuit. In the months following the letter, Allstate did not

ask about Smith's lack of a response to the offer. Smith could have reasonably inferred that his not acting on the offer put the Arnolds and Allstate on notice of an intent to file suit—particularly in light of the impending statute of limitations—to which they did not respond, even after the suit was filed. *See Prof'l Marine Co.*, 118 Wn. App. at 711 (finding that insurer had not "appeared" by sending a letter rejecting insured's demand to be defended or indemnified, and which did not address insured's indication that such rejection would result in a lawsuit). Moreover, the Arnolds failed to respond during the two months after service, and Allstate failed to reply promptly after receiving a courtesy copy of the summons and complaint on November 20.

¶29 The record supports the superior court's finding that an "informal" appearance had not occurred. Put another way, there is substantial evidence to support a finding that Smith could have reasonably harbored illusions about whether the Arnolds and Allstate intended to defend the matter. Therefore, the Arnolds were not entitled to notice before entry of the default order, and the superior court properly refused to vacate that order.

EXCUSABLE NEGLECT AND DUE DILIGENCE

¶30 The Arnolds also contend that the default order should have been vacated for "good cause" under CR 55(c)(1) because their failure to timely appear was the result of excusable neglect and they diligently sought to have the default order set aside. Although the issue was raised in passing during oral argument before the superior court, the Arnolds did not address it in their brief supporting the motion to vacate. *See Bradbury v. Aetna Cas. & Sur. Co.*, 91 Wn.2d 504, 512, 589 P.2d 785 (1979) ("We will not consider issues raised for the first time on appeal."). In addition, the Arnolds did not raise the issue in their motion for discretionary review or in their opening brief on appeal. The Arnolds' written argument on this issue appeared for the first time in its reply brief. "An issue raised and argued for the first time in a reply brief is too late to warrant

consideration." *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992). By failing to present and provide support for their good cause argument in a timely manner, the Arnolds have waived this issue.

¶31 Moreover, even were the issue preserved, there is no evidence to support a conclusion that the failure to appear was the result of excusable neglect. Smith served the Arnolds more than two months before the default order was obtained. By the Arnolds' own admission, they did not respond or forward the documents to Allstate because the suit "was quite low on [their] list of priorities at the time." CP at 23. In addition, Allstate waited 20 days before contacting Smith after it received the summons and complaint. Although Allstate attributed this delay to the assigned claims adjuster being on vacation, this 20-day period included 13 business days, only four of which were during the employee's vacation. And once the claims adjuster learned of the two-month-old lawsuit on December 10, Allstate waited another 17 days before filing a notice of appearance. Allstate has never proffered an excuse for this lapse of time. *See* CP at 29 (declaration of Allstate claims adjuster) ("For some unknown reason Allstate Staff Counsel failed to enter a notice of appearance until December 27, 2002."). *Accord Prest v. Am. Bankers Life Assurance Co.*, 79 Wn. App. 93, 100, 900 P.2d 595 (1995) (finding inexcusable neglect where insurer's failure to respond in the two months between service and the default order was due to the summons and complaint being "mislaid" and, thus, not forwarded to corporate counsel), *review denied*, 129 Wn.2d 1007 (1996). Not one of these actions suggests that Allstate's or the Arnolds' failure to appear was the result of excusable neglect.

114

¶32 The trial court properly declined the Arnolds' and Allstate's arguments that they be excused from formal notice of appearance requirements and we affirm.

HOUGHTON and BRIDGEWATER, JJ., concur.