[No. 31928-4-II.   Division Two.   August 9, 2005.]

DESIREE C. GUTZ ET AL., *Respondents*, v. STANLEY B. JOHNSON ET AL., *Appellants*.

904

*Thomas L. Schwanz* (of *Snook & Schwanz*) and *Marilee C. Erickson* and *Katina C. Thornock* (of *Reed McClure*), for appellants.

*Thomas F. Gallagher* (of *Law Offices of Watson & Gallagher*), for respondents.

¶1 VAN DEREN, J. — Stanley Johnson and the marital community appeal the trial court's denial of their motion to vacate a default order and judgment in favor of Desiree and Sharon Gutz for injuries allegedly caused by an automobile collision. The Johnsons argue that: (1) their insurance company's extensive communications with Sharon Gutz and the Gutzes' counsel constituted an informal appearance under CR 55(a)(3) that entitled them to notice of the default order; and (2) the trial court erred in denying their motion to vacate the default judgment because they satisfied the four elements of relief under CR 60(b). The Gutzes argue that the majority of the Johnsons' assignments of error are

not properly preserved for appellate review. We vacate, reverse, and remand the case for trial.

## FACTS

A. Automobile Accident and Pre-lawsuit Communications

¶2 In October 2000, Sharon Gutz, and her minor daughter, Desiree Gutz, were in an automobile accident with Stanley Johnson. The accident occurred at a stop sign at the intersection of Military Road and State Route 161 in Federal Way, Washington. Sharon[1] was turning left onto Military Road and Johnson was turning left to State Route 161. Their cars collided. Johnson maintains that the cars were moving slowly and Sharon asserts that her car was totaled. Johnson also asserts that Sharon told him at the scene of the accident that she had prior neck problems.

¶3 Immediately after the car accident, Sharon went to the hospital and was examined for neck and back pain. The results came back normal but she received massage therapy for approximately six months. Desiree was diagnosed for possible whiplash but she received no medical treatment until she obtained physical and massage therapy two years after the accident.

¶4 Johnson's insurer was the Allstate Insurance Company. The Gutzes filed a damages claim with Allstate soon after the car accident with Johnson. In January 2001, Allstate wrote Sharon to discuss her and Desiree's claims. Ten months later in October 2001, Allstate left a phone message with Sharon to obtain more information about her claims. Then in September 2002, Allstate wrote a letter to Sharon indicating that they tried to reach her at work and advised her that she needed to provide additional medical records to fully evaluate her claims, particularly regarding wage loss issues.

¶5 In November 2002, the Gutzes' counsel sent a letter informing Allstate that he was representing Sharon and

---

[1] When appropriate, we reference the Gutzes by their first names for clarity. No disrespect is intended.

Desiree for injuries sustained in the car accident with Johnson. The Gutzes' counsel requested medical and other information from Allstate to enable his office to evaluate the matter and for "verification of coverage for your insured [Johnson] at this time." Clerk's Papers (CP) at 255.

¶6 In February 2003, the Allstate claims adjuster discussed "the claims and the status of treatment for the two claimants" with a paralegal of the Gutzes' counsel's office. CP at 245. The claims adjuster also sent a letter to the Gutzes' counsel acknowledging his representation of the Gutzes. Allstate's claims adjuster requested that the Gutzes' counsel's office forward any medical bills and reports, emphasized that they needed written documentation for a wage loss claim, and stated that, "I am hopeful that, through our joint efforts, we will be able to bring this matter to a prompt resolution, and I look forward to working with you towards that goal." CP at 259.

¶7 In May 2003, Allstate requested a settlement demand letter from the Gutzes' counsel. Three months later in late August 2003, the Gutzes' counsel sent a settlement demand letter on Sharon's behalf only. The demand letter stated that the statute of limitations on Sharon's case would run on October 6, 2003. Allstate promptly sent a written acknowledgement of the demand letter from the Gutzes' counsel.

¶8 In late September 2003, a paralegal from Gutzes' counsel's office called Kimberly Bridgewater, an Allstate claims adjuster, and informed her that the statute of limitations was about to run on Sharon's potential lawsuit and inquired whether Allstate would increase its original settlement offer to Sharon.

B. The Gutzes' Lawsuit

¶9 On October 2, 2003, the Gutzes' sued Johnson and his marital community as a result of the automobile accident in Federal Way. The complaint alleged that Johnson was negligent and proximately caused their injuries. The Johnsons were served on October 16, 2003, and Mr.

Johnson promptly left a voice mail with Bridgewater at Allstate about the lawsuit. Johnson's declaration stated, "[o]nce I called and left the message [with Bridgewater] that I had been served I believed that Allstate would retain an attorney to represent me . . . . I believed that my interests would be protected by Allstate after I called the adjuster and that I did not need to do anything else in order to protect my interests." CP at 281. Bridgewater's declaration asserted that she did not receive Johnson's phone message.

¶10 On October 27, 2003, Bridgewater called the Gutzes' counsel with an offer to settle Sharon's claim. Bridgewater's declaration asserted that she discussed with the Gutzes' counsel "whether the offer would be sufficient or whether the case would be litigated." CP at 246. The Gutzes' counsel's declaration acknowledged that he spoke with Bridgewater about her settlement offer but emphasized that "[a]t no time did we discuss whether the case would be litigated." CP at 90.

## C. Default and the Johnsons' Motion to Set Aside Order

¶11 On November 6, 2003, 21 days after the Johnsons were served, and 10 days after the discussion with Bridgewater, the Gutzes moved for and obtained a default order. The Gutzes' counsel did not inform Bridgewater or any other Allstate representative of the default motion or order.

¶12 On November 12, 2003, an Allstate claims adjuster called the Gutzes' counsel's office to "follow-up on the status of the offer of October 27, 2003." CP at 247. A paralegal stated that a lawsuit had been filed but did not confirm the details of service on the Johnsons. The paralegal did *not* mention the recently obtained default order. Allstate requested a faxed copy of the Gutzes' lawsuit. Near the same time, Johnson's declaration states that his local Allstate office faxed a copy of the Gutzes' complaint to Bridgewater. The record is unclear exactly when in November Allstate actually received the Gutzes' lawsuit.

¶13 On December 2, 2003, a paralegal from the Gutzes' counsel's office wrote Allstate that "at the time of our conversation [in mid-November] . . . the plaintiffs' attorney of record, had already obtained an Order of Default with regard to your insured. I have attached hereto a copy of that order for your review." CP at 267. Per Bridgewater's request, the paralegal faxed Bridgewater a copy of proof of service on the Johnsons a few days later.

¶14 On December 11, 2003, the Johnsons' counsel filed a notice of appearance with the court. The Johnsons' counsel also called the Gutzes' counsel to request that they voluntarily set aside the default order. The Gutzes' counsel refused. On January 16, 2004, the Johnsons obtained new counsel who also filed a notice of appearance with the court and requested that the Gutzes' counsel voluntarily set aside the default order. The Gutzes' counsel again refused.

¶15 On February 19, 2004, the Johnsons filed a motion to set aside the default order. The Johnsons argued that they were entitled to notice of the default order under CR 55 because Allstate's communications with the Gutzes' counsel demonstrated an intent to defend, thus they informally appeared in the action. The trial court denied the Johnsons' motion and determined that Allstate did not informally appear and that the Johnsons were not entitled to notice of the default motion. The court also found that Allstate did not demonstrate good cause to set aside the default order under CR 55(c)(1) because the insurer's actions constituted inexcusable neglect and were not diligent.

D. Default Judgment and the Johnsons' Motion to Vacate Judgment

¶16 Approximately two weeks later, on March 24, 2004, The Gutzes' counsel obtained a default judgment in favor of Sharon and Desiree Gutz that included findings of fact and conclusions of law. The Gutzes' default judgment was based on declarations from Sharon, Desiree, two treating physicians, and Sharon and Desiree's medical records. The court found that "live testimony is not required in order to enter

[the] default judgments" and that "Plaintiffs were without fault in the October 6, 2000, collision." CP at 205-06. The trial court awarded special damages of $10,281.07 and $4,927.22 to Sharon and Desiree respectively, and general damages of $80,000 and $60,000 to Sharon and Desiree respectively.[2]

¶17 The Gutzes' counsel did not notify the Johnsons' counsel of the request for entry of default judgment. Instead, the Johnsons' counsel learned of the default judgment when he received a faxed copy of the default judgment summaries and the court's findings and conclusions 33 days after they were entered.

¶18 Approximately three weeks later, the Johnsons moved to set aside the default judgment and default order. Their motion reasserted their informal appearance arguments under CR 55 to preserve the issue for appeal and extensively briefed the four elements they must prove to vacate the default order and judgment under CR 60(b).

¶19 The trial court began the hearing on the Johnsons' motion to vacate by stating that after revisiting the parties' pleadings, the court intended to vacate the default order and judgment and proceed to a trial on the merits. The parties initially focused on whether the Johnsons informally appeared; however, the Gutzes also argued that the merits of Johnsons' motion were precluded and not properly before the court because the Johnsons failed to timely appeal and move for reconsideration of the default order.

¶20 Without considering any substantive argument or evidence under CR 60(b), the court reversed its earlier stated intention and denied the Johnsons' motion to vacate based entirely on the Gutzes' procedural arguments.

¶21 The Johnsons timely appealed.

---

[2] Because the Johnsons challenge neither the specific finding regarding live testimony nor the trial court's special damages award, we do not review these issues and they are verities on appeal. *Robel v. Roundup Corp.*, 148 Wn.2d 35, 42, 59 P.3d 611 (2002).

## ANALYSIS

### I. Preservation of Issues for Appellate Review

¶22 The Gutzes initially argue that the Johnsons failed to preserve their challenge for appellate review on both the default order and the merits of the default judgment. At the June 2004 hearing on the Johnsons' motion to vacate both the default order and judgment under CR 60(b), the Gutzes argued that the Johnsons' failure to seek discretionary review or reconsideration of the trial court's default order precluded the trial court's ability to fully review the Johnsons' arguments. The Gutzes' contention is unpersuasive.

¶23 First, the Gutzes ignore that a default *order* is *not* appealable as a matter of right under RAP 2.2(a) and they misconstrue the nature of discretionary review. *See* RAP 2.3(c) ("the denial of discretionary review of a superior court decision does *not* affect the right of a party to *obtain later review* of the trial court decision *or the issues pertaining* to that decision") (emphasis added).

¶24 Second, the trial court erred in relying on the Gutzes' improper procedural argument as the basis for denying the Johnsons' CR 60(b) motion. Although CR 55 and CR 60 share two factors, excusable neglect and due diligence, the procedural posture is distinct under each motion. *See In re Estate of Stevens*, 94 Wn. App. 20, 31, 971 P.2d 58 (1999) (emphasizing that the movant "consistently directed the trial court to the rules and case law under CR 60"); *see also* CR 60(b) (declaring a filing deadline of one year or a reasonable time). Indeed, CR 60(b) provides the court the opportunity to revisit its prior default order under its equitable powers. *Stevens*, 94 Wn. App. at 31 (stating that a party "moved to vacate the order of default, and for reconsideration under CR 60, not CR 55"); *Showalter v. Wild Oats*, 124 Wn. App. 506, 510, 101 P.3d 867 (2004).

¶25 Here, the trial court began the CR 60 hearing by stating that it was prepared to grant the Johnsons' CR

60(b) motion and vacate the default order and judgment.[3] But after hearing the Gutzes' procedural arguments, the trial court denied the Johnsons' CR 60(b) motion on this basis only.[4] Consequently, the trial court did not review whether the Johnsons satisfied the four elements that justify setting aside a default judgment under CR 60(b), even though the CR 60 memoranda applied CR 60(b)'s elements to the Gutzes' evidence and the Johnsons' timely filed their motion three weeks after learning of the default judgment.

¶26 Finally, the Gutzes did not notify the Johnsons of entry of the default judgment for 33 days—beyond the time allowed to appeal the judgment under RAP 2.2—even though the parties had argued the motion to set aside the default order less than two weeks earlier. The Gutzes assert that they were not required by the civil rules or case law to give notice of their motion for a default judgment to the Johnsons because they had obtained a default order, thereby extinguishing all rights of the Johnsons to contest any occurrence in the case, even damages. But default proceedings are equitable in nature and "[o]ur primary concern is that a trial court's decision on a motion to vacate a default judgment is just and equitable." *Wild Oats*, 124 Wn. App. at 510.

¶27 Thus, the Johnsons' assignments of error under CR 55 and CR 60 are properly raised and preserved for appellate review.

---

[3] *See* Report of Proceedings (RP) (June 11, 2004) at 4 ("I'm rather troubled by several factors after having some quiet time . . . and just spreading everything out and looking at it . . . I'm going to reverse my previous order and set the matter for trial . . . . And that's my tentative [ruling], but I do not want to preclude anyone from setting the record.").

[4] *See* RP at 47 ("Here is where I am going to rule. I am *going to deny* the defendant's motion. In part [*because*] *I think you probably would have a better chance had you filed for reconsideration or appeal* but mostly if you had filed for reconsideration and *since that is not the case, both of those,* the failure to ask for reconsideration and to appeal your motion will be denied.") (emphasis added).

## II. Informal Appearance Under CR 55

¶28 The parties vigorously dispute whether the Johnsons were entitled to notice of the default order under CR 55(a)(3) that would justify the trial court setting aside the default order. The Johnsons contend that because they informally appeared before the court regarding the Gutzes' lawsuit, they were entitled to notice of the default order under CR 55(a)(3). The Johnsons assert that informal appearance is broadly construed and that Allstate's active communications with the Gutzes' counsel, both before and after the commencement of the lawsuit, demonstrated an intent to defend and an appearance, because their insurer, Allstate, was acting as the Johnsons' agent.

¶29 Under CR 55(a)(3),[5] "[i]f a party has 'appeared' before a motion for default has been filed, that party is entitled to notice of the motion before the trial court may enter a valid default order." *Smith v. Arnold*, 127 Wn. App. 98, 103, 110 P.3d 257, 260 (2005). Consequently, if a defendant has appeared but "not given proper notice prior to entry of the order of default, the defendant is *entitled to vacation of the default judgment as a matter of right.*" *Prof'l Marine Co. v. Those Certain Underwriters at Lloyd's*, 118 Wn. App. 694, 708, 77 P.3d 658 (2003) (emphasis added) (citing *Shreve v. Chamberlin*, 66 Wn. App. 728, 832 P.2d 1355 (1992)).

¶30 It is well accepted that "informal acts may . . . constitute an appearance [under CR 55(a)(3)]." *Lloyd's*, 118 Wn. App. at 708; *see also Arnold*, 127 Wn. App at 103-05. But in *Arnold*, we recently articulated the standard of review for an informal appearance dispute and addressed how a party's actions can constitute an informal appearance under CR 55(a)(3). 127 Wn. App. at 103-07.

[5] CR 55(a)(3) provides:

(3) *Notice*. Any party who has appeared in the action for any purpose shall be served with a written notice of motion for default and the supporting affidavit at least 5 days before the hearing on the motion. Any party who has not appeared before the motion for default and supporting affidavit are filed is not entitled to a notice of the motion, except as provided in rule 55(f)(2)(A).

¶31 In *Arnold*, we held that informal appearance is a factual question determined by the parties' submitted evidence and is *not* reviewed for a trial court's abuse of discretion. 127 Wn. App. at 103-05. We also followed the long-standing principle that "a trial court's [factual] finding that a party has appeared *informally* must also be supported by evidence of actions manifesting an unquestionable intent to appear and defend the matter in court." *Arnold*, 127 Wn. App. at 105.

¶32 Further, unlike our sister divisions, we emphasized that generally we narrowly construe informal appearance under CR 55(a)(3). *Arnold*, 127 Wn. App. at 105-07. But we refused to adopt a "bright-line rule concerning the sufficiency of actions" that constitute an informal appearance given the inherent factual and circumstantial nature of an informal appearance inquiry. *Arnold*, 127 Wn. App. at 109.[6]

¶33 Thus, to determine whether Allstate informally appeared in order to trigger CR 55(a)(3)'s notice requirement, we review whether sufficient evidence demonstrates Allstate's unquestionable intent to defend the Gutzes' lawsuit.

¶34 Here, the record demonstrates that Allstate, on behalf of Johnson, its insured, consistently attempted to resolve the Gutzes' claims and lawsuit for approximately three years from January 2001 to December 2003. Allstate's extensive communications were between both Sharon individually and the Gutzes' counsel, and involved efforts to understand the Gutzes' claims, negotiate their settlement demand letter, and keep updated on the status of the claim.

¶35 The record demonstrates that both the Gutzes and their counsel always understood Allstate represented Johnson regarding their claims against him from the car accident on State Route 161. And Desiree never submitted

---

[6] *Arnold* emphasized that, "[w]e acknowledge that in certain situations, the defendant's actions may be so unambiguous as to leave the plaintiff with only one reasonable conclusion: that the defendant has every intention to submit to the trial court's jurisdiction and vigorously defend the matter." 127 Wn. App. at 109-10.

a settlement demand to Allstate, thus Allstate cannot be faulted for not aggressively negotiating her claims or anticipating that they would result in subsequent litigation.

¶36 Instead of meaningfully acknowledging the foregoing facts, the Gutzes focus on Allstate's post-lawsuit contact in October 2003, to demonstrate that Allstate did not intend to defend the complaint. The Gutzes' contention is highly unpersuasive.

¶37 After six months of communication with Allstate about Sharon's settlement demand, the Gutzes filed their complaint in early October 2003. Approximately three weeks later, Allstate contacted the Gutzes' counsel about Allstate's settlement offer; however, the Gutzes' counsel concealed that he recently filed a lawsuit involving these claims. Approximately two weeks later, Allstate initiated another inquiry about their settlement offer and was informed of the lawsuit, but *not* the recently obtained default order. Approximately three weeks later in early December 2003, a paralegal in the Gutzes' counsel's office informed Allstate of the default order against the Johnsons for the first time.

¶38 The Gutzes' counsel emphasizes that Allstate should have known about the lawsuit because he informed them of the limitations deadline. And in his declaration he states that, "Ms. Bridgewater did not acknowledge that a lawsuit had been filed to preserve Sharon Gutz's claims or even ask if a lawsuit had been filed." CP at 90. But the ultimate decision to file a lawsuit rests with the Gutzes, not Allstate, the record is completely devoid of any bad faith by Allstate in attempting to resolve the Gutzes' claims, and Allstate's settlement offer remained an option after the commencement of the action. Thus, given these circumstances, it is disingenuous for the Gutzes to assert that Allstate did not intend to defend their lawsuit.

¶39 The Gutzes' discussion of *Seek Systems* and *Lloyd's* is also unpersuasive. Unlike the extensive communications between Allstate and the Gutzes before and after the lawsuit, the *Seek* court found the defendant failed to informally

appear because the defendant's evidence "involve[d] a single phone call." *Seek Sys., Inc. v. Lincoln Moving/Global Van Lines, Inc.*, 63 Wn. App. 266, 270, 818 P.2d 618 (1991). And "[m]ost importantly, for the next 14 months neither the caller nor [the defendant] did anything whatsoever to respond to or defend the suit." *Seek Sys.*, 63 Wn. App. at 271. Similarly, in *Lloyd's*, the only communication between the respondent and the defendant's insurer was a single, prelitigation letter that failed to request additional information or inquire about the claims at issue. 118 Wn. App. at 709-11.

¶40 The facts in *Arnold* are also distinguishable. Unlike in *Arnold*, Allstate's extensive communications attempted to resolve claims between the insured and insurer and these communications about the Gutzes' claims occurred for almost three years. 127 Wn. App. at 109-11. Further, in *Arnold* the insurer made just one settlement offer before the lawsuit. 127 Wn. App. at 111-13. Here, Allstate negotiated a settlement three times that included a postlawsuit settlement offer where Gutzes' counsel failed to reveal the recent filing of a lawsuit regarding these claims.

¶41 Thus, given the facts and circumstances here, we agree with the Johnsons that, "[t]he communications [of Allstate] clearly manifested Mr. Johnson's intent to defend against plaintiff's claims . . . the acts of the Allstate adjusters are sufficient to bring the company's actions within the gamut of those considered to demonstrate intent to defend and entitled Mr. Johnson to notice of default." Br. of Appellant at 18.

¶42 We reverse the trial court's finding that the Johnsons did not informally appear. Consequently, the default order must be vacated because the Johnsons did not receive notice of the Gutzes' motion for default as required under CR 55(a), and the case is remanded for a trial on the merits.

¶43 Although our holding does not require further review, the trial court's default order also found that Allstate did not demonstrate good cause under CR 55(a)(3) because

the insurer's actions were inexcusable neglect and not diligent. Given the contentious history between the parties and to clarify potential issues on remand, we review the trial court's ruling under the Johnsons' CR 60(b) motion to vacate the default judgment.

### III. Motion to Vacate under CR 60(b)

¶44 The Johnsons argue that the trial court abused its discretion in refusing to vacate the default judgment under CR 60(b) because they satisfied the four elements under this rule. We agree.[7]

¶45 "Default judgments are generally disfavored in Washington based on an overriding policy which prefers that parties resolve disputes on the merits." *Wild Oats*, 124 Wn. App. at 510 (citing *Griggs v. Averbeck Realty, Inc.*, 92 Wn.2d 576, 581, 599 P.2d 1289 (1979)). We review a trial court's ruling under CR 60(b) for an abuse of discretion. *Wild Oats*, 124 Wn. App. at 510. Our primary concern is that the default judgment is just and equitable; thus, "we evaluate the trial court's decision by considering the unique facts and circumstances of the case before us." *Wild Oats*, 124 Wn. App. at 511. Further, we are more likely to reverse a trial court decision refusing to set aside a default judgment. *Wild Oats*, 124 Wn. App. at 511.

¶46 The party seeking to vacate a default judgment under CR 60 must demonstrate four factors:

"The primary factors are: (1) the existence of substantial evidence to support, at least prima facie, a defense to the claim asserted; (2) the reason for the party's failure to timely appear, *i.e.*, whether it was the result of mistake, inadvertence, surprise or excusable neglect. The secondary factors are: (3) the party's diligence in asking for relief following notice of the entry of the default; and (4) the effect of vacating the judgment on the opposing party."

---

[7] As previously discussed, the trial court did not review the merits of the Johnsons' CR 60(b) motion; however, the parties' briefing provides an ample record to review the prima facie and substantial hardship elements under this rule.

*Wild Oats*, 124 Wn. App. at 511 (quoting *Calhoun v. Merritt*, 46 Wn. App. 616, 619, 731 P.2d 1094 (1986)).

A. Prima Facie Defense

¶47 The Johnsons argue that they have demonstrated a prima facie defense to the Gutzes' personal injury action, emphasizing that the record demonstrates preexisting injuries, an inflated general damages award, and a lack of proximate cause. The Johnsons do not challenge the default judgments' *special* damages award, so these amounts are verities on appeal.

¶48 In determining a motion to vacate, the trial court does not make factual determinations; rather, the court evaluates whether the movant, under CR 60(b), has established substantial evidence of a prima facie defense. *Pfaff v. State Farm Mut. Auto. Ins. Co.*, 103 Wn. App. 829, 834, 14 P.3d 837 (2000). Significantly, the court must review the evidence in the light most favorable to the moving party. *Pfaff*, 103 Wn. App. at 834.

¶49 Here, the Johnsons have put forth a prima facie defense to the Gutzes' lawsuit which contends that they were severely injured in the automobile collision due to the Johnsons' negligence. Mr. Johnson's declaration states that the collision occurred at a low speed and could have been avoided. The Gutzes' declaration stated that their car was totaled; however, they were "severely jostled" by the impact and Desiree walked away from the accident to call for help. CP at 173. In the light most favorable to the Johnsons, the evidence contradicts the court's conclusion that the plaintiffs were fault free.

¶50 The Johnsons also present a reasonable defense to the court's general damages award. Desiree submitted medical records for treatment that first occurred more than two years after the accident. Desiree's delay in seeking treatment raises questions about whether her alleged injuries were proximately caused by the earlier automobile accident and whether her $60,000 general damages award is justified. As the Johnsons assert, "if Desiree had sus-

tained injuries as a result of the minor automobile accident, she would have undergone a course of continuous medical treatment." Br. of Appellant at 26.

¶51 Similarly, the medical evidence on Sharon does not appear to justify her $80,000 general damages award. Johnson's declaration states that at the time of the accident, Sharon told him that she suffered from prior neck and back problems. The evidence submitted to the trial court confirms medical treatment for neck pain before the accident. The damages award fails to account for this preexisting injury. Additionally, the only consistent medical treatment Sharon received immediately after the accident was six months of massage therapy. After March 2001, there is no indication of further medical treatment. Further, the hospital's tests for neck and back pain performed the day of the accident came back normal.

¶52 The Gutzes' responses to the foregoing facts are unpersuasive. The Gutzes argue that Johnson's declaration regarding the nature of the accident is inadmissible speculation. But layperson testimony is admissible and relevant in personal injury action. *See, e.g., White v. Holm*, 73 Wn.2d 348, 352, 438 P.2d 581 (1968). The Gutzes further assert that the Johnsons' counsel cannot rely on the jury verdicts from other cases to demonstrate the unreasonableness of the general damages award; however, this assertion avoids the fact that the submitted medical documentation appears significantly inconsistent with the general damages award.

¶53 Considering the evidence in the light most favorable to the Johnsons, they have demonstrated substantial evidence of a prima facie defense to the Gutzes' lawsuit and damages award.

B. Excusable Neglect

¶54 The Johnsons argue that their failure to appear was the result of a mistake and excusable neglect.

¶55 Excusable neglect is determined on a case by case basis. *Norton v. Brown*, 99 Wn. App. 118, 123, 992

P.2d 1019 (1999). It is well settled that "[a] genuine misunderstanding between an insured and his insurer as to who is responsible for answering the summons and complaint will constitute a mistake for purposes of vacating a default judgment." *Norton*, 99 Wn. App. at 124.

¶56 Here, when the Johnsons were served the Gutzes' complaint, Mr. Johnson promptly left a message with Allstate. As a layperson unfamiliar with litigation, he reasonably believed that he did not need to do anything further. Allstate's claim adjuster does not remember receiving Mr. Johnson's call and asserts that they were unaware of the lawsuit until mid-November. These facts demonstrate a misunderstanding between Mr. Johnson and Allstate. Although in hindsight Mr. Johnson should have clarified Allstate's receipt of his call and assured himself of its knowledge of the Gutzes' complaint, his failure to do so is not an equitable and just reason to deny him the opportunity for a trial on the merits when he has satisfied the additional factors for relief under CR 60(b).

¶57 Thus, the Johnsons' conduct here constituted a mistake and excusable neglect.

## C. Due Diligence

¶58 The Johnsons contend that they acted with due diligence in seeking to vacate the Gutzes' default order and judgment.

¶59 A party must use diligence *"in asking for relief following notice* of the entry of the *default." Calhoun*, 46 Wn. App. at 619 (emphasis added). Thus, a party that has received notice of a default judgment and does nothing for three months has failed to demonstrate due diligence. *In re Stevens*, 94 Wn. App. at 35. Conversely, a party that moves to vacate a default judgment within one month of notice satisfies CR 60(b)'s diligence prong. *Johnson v. Cash Store*, 116 Wn. App. 833, 842, 68 P.3d 1099, *review denied*, 150 Wn.2d 1020 (2003).

¶60 Here, the Johnsons have demonstrated due diligence. As previously discussed, Mr. Johnson reasonably

assumed that Allstate was handling the Gutzes' complaint. Allstate learned of the default order on December 2, 2003. Nine days later, counsel formally appeared in the action to defend the Johnsons and promptly asked the Gutzes' counsel to voluntarily set aside the default order, which was refused. In early January 2004, the Johnsons obtained new counsel, who is part of this appeal. The Johnsons' counsel again asked the Gutzes' counsel to set aside the default order, which was refused. Approximately one month after this request, the Johnsons moved to set aside the default order.

¶61 The Gutzes argue that the Johnsons were not diligent because, as in *Stevens*, 79 days passed between the notice of default and the motion to set it aside. But unlike counsel in *Stevens*, who did nothing upon notice of the default, the Johnsons actively negotiated with the Gutzes' counsel to set aside the default order. And the Johnsons' decision to obtain new counsel is not an equitable reason to find a lack of diligence. Further, due diligence is a secondary factor, unlike the two primary factors the Johnsons have already satisfied.

¶62 Thus, the circumstances here, coupled with the equitable nature of our review of denial of a CR 60(b) motion, demonstrate that the Johnsons satisfied the due diligence prong.

## D. Substantial Hardship

¶63 Finally, the Johnsons contend that the Gutzes will not sustain substantial hardship if the default judgment is vacated.

¶64 The possibility of a trial is an insufficient basis for the court to find substantial hardship on the nonmoving party. *Pfaff*, 103 Wn. App. at 836: *see also Cash Store*, 116 Wn. App. at 842 ("vacation of a default inequitably obtained cannot be said to substantially prejudice the nonmoving party merely because the resulting trial delays resolution on the merits"). This reasoning is consistent with Washington's policy that prefers parties resolve disputes on the

merits, as opposed to default proceedings. *Wild Oats*, 124 Wn. App. at 511.

¶65 Here, the Gutzes argued below that they would suffer unnecessary delay if they did not receive the damages that they were entitled to under the default order. This argument is unpersuasive, particularly when, but for the trial court's upholding the default judgment, the trial would have occurred within three months of the default hearing.

¶66 Additionally, the record demonstrates that Sharon has always been employed and is not dependent on the judgment for her livelihood. Further, the Gutzes do not appear to be receiving ongoing medical treatment related to the car accident nor are they unable to recall the details of the accident for the purposes of a trial. Thus, the Johnsons have satisfied this final prong in a vacation proceeding under CR 60(b).

¶67 Because the Johnsons satisfied the four factors that demonstrate they are entitled to relief under CR 60(b), the trial court abused its discretion in denying their motion to vacate the default order and judgment.

¶68 In summary, we vacate, reverse the trial court, and remand for a trial on the merits for two independent reasons. First, the Johnsons informally appeared and were not provided notice of the default order. Second, the Johnsons satisfied their evidentiary burden under CR 60(b).

BRIDGEWATER and HUNT, JJ., concur.

Review granted at 156 Wn.2d 1017 (2006).