IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| DONALD K. BINGHAM and JANET L. BINGHAM, husband and wife, | ) ) ) | No. 32567-9-III |
| Appellants, | ) ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| GARY A. HEADRICK and MARY JANE HEADRICK, husband and wife, | ) ) ) | |
| Respondents. | ) ) | |

BROWN, A.C.J. — Donald K. and Janet L. Bingham appeal the trial court's 2013 contempt and sanction rulings favoring their neighbors Gary A. and Mary Jane Headrick stemming from a 1994 easement dispute settlement. In an unappealed 2000 dispute enforcement order, the trial court specified an enlarged turnaround on the Binghams' property requiring them to move their barn. In 2011, the Binghams moved their barn back onto the easement leading to this dispute. The Binghams contend the trial court erred in deciding they violated the 2000 court order. We disagree, and affirm.

FACTS

In 1994, the Binghams sued to quiet title, partly regarding a driveway placement dispute with the Headricks. Later that year the parties settled in a court-approved

stipulated agreement creating an 8' x 10' turnaround easement on the Binghams' property in favor of the Headricks. The location was to be between a proposed retaining wall and a barn. In 1998 after a boulder placement dispute, the parties agreed the Headricks would remove all but one boulder "in exchange that [the Binghams] relocate [their] barn in favor of [the Headricks] turn-around area." Clerk's Papers (CP) at 349. The barn was apparently to be placed near a maple tree.

Over the years, the parties filed multiple enforcement requests. Disputed now is a January 2000 letter order reduced to an unappealed judgment on March 23, 2000. The order required the Headricks to move their barn by June 1, 2000 based on the 1994 and 1998 agreements. The court ordered, "The Headricks' turnaround area shall be expanded by the area created by moving the red barn." CP 42-43. The court denied the Headricks' request for contempt sanctions.

In 2000, the Headricks hired Larry Weinert of Munson Engineering, Inc. d/b/a Weinert Surveying, to survey the expanded area. The survey recorded in 2001 showed an expanded easement of approximately 8' x 22' for a turnaround area. This survey mistakenly identified the easement as a parking and turnaround easement, which the Binghams' counsel objected to in a letter to the Headricks' attorney. The Binghams requested the survey be re-recorded to remove the reference to the parking easement, but otherwise did not object to the survey's turnaround dimensions. The Headricks complied with the letter and recorded the survey again, solely deleting the reference to

2

parking. The location and dimensions of the expanded turnaround area ordered by the trial court remained the same in the re-recorded survey as in the original survey.

In late 2011, for unexplained reasons, the Binghams moved their barn roughly seven feet into the expanded easement and installed fence stakes along the side facing the easement reducing the turnaround easement nearly to the pre-2000 8' x 10' area. In 2013 after negotiations failed and the original judge (John Bridges) had retired, the Headricks requested the court (Judge Lesley A. Allan) enforce the 2000 judgment expanding the turnaround easement. The Binghams countered that the turnaround easement was never more than an 8 x 10 area. The trial court applying the 2000 order disagreed, finding "[Headricks'] turnaround area was expanded by the area created by moving the barn and it was ordered that the total turnaround areas shall run with the land." CP at 530. The court ordered the barn to be moved to the location shown on the Weinert survey.

At the hearing before entry of the court's order, the Binghams contested the court's interpretation of the 2000 judgment, the trial court stated, "[M]y interpretation of Judge Bridges' ruling that the turnaround area then was expanded, and 'expanded' is a word that Judge Bridges used to encompass that area. . . . Which to me looks like that whole area on this side of the barn, which is bigger than the 8-by-10 . . . . So that is my intent and interpretation of a decision that Judge Bridges made many, many years ago that was not appealed." Report of Proceedings (RP) at 63-64. Later in the hearing, the court stated, "We have a survey conducted at the time showing where it was moved and

3

I'm satisfied with that information, that that showed exactly what Judge Bridges intended." RP at 70.

In 2013, the court ordered enforcement of the 2000 order. The court found, "Plaintiffs knowingly and intentionally violated this Court's March 23, 2000, rulings relative to the Turnaround Easement by moving their barn into the Court-ordered Turnaround Area very near the parties' common boundary line, thus knowingly and intentionally preventing the Defendants from their rightful use and enjoyment of the Turnaround Easement. The Court, therefore, finds the Plaintiffs to be in contempt." CP at 608. The court granted the Headricks' request for attorney fees and imposed contempt sanctions, imposing judgment against the Binghams for $25,136 in attorney fees and $1,465 as sanctions for loss of use of the full turnaround easement. The Binghams unsuccessfully requested both reconsideration and relief from judgment under CR 60. The Binghams relocated their barn as ordered. The Binghams appealed.

## ANALYSIS

### A. Contempt and Sanctions

The issue is whether the trial court erred by abusing its discretion in finding the Binghams in contempt and ordering sanctions. The Binghams contend substantial evidence does not show they intentionally and willfully violated any agreement.

Initially, the Binghams challenge the sufficiency of the trial court's 2000 findings of fact in support of its contempt order, requiring the Binghams to move the barn in conformance with the agreement reached by the parties and to expand the turnaround

4

area. The Binghams argue the court should have entered more specific findings regarding the exact expansion size. The Binghams challenge the 2013 findings in support of the court's contempt order, arguing they fail to adequately explain how the Binghams were in contempt.

A trial court must make findings of fact specifying the basis for its contempt judgment. *In re Marriage of James*, 79 Wn. App. 436, 440, 903 P.2d 470 (1995). First, the 2000 judgment is not the direct subject of this appeal. This appeal relates to the 2013 contempt finding and 2014 imposition of sanctions. Thus, any challenge to the 2000 findings of fact is untimely. Next, the 2013 order clearly states the court finds, "The area, dimensions, and location of the Turnaround Easement are as depicted and described on Exhibit 5 [the Weinert survey]." CP at 607. The court further found "[the Binghams] knowingly and intentionally violated this Court's March 23, 2000, rulings relative to the Turnaround Easement." CP at 608. These findings specify the basis of the court's contempt finding and are sufficient for our review.

We review a contempt order under RCW 7.21.010 for abuse of discretion. *Moreman v. Butcher*, 126 Wn.2d 36, 40, 891 P.2d 725 (1995). A court abuses its discretion when its decision is based on untenable grounds or is made for untenable reasons. *Id.* Moreover, we review a trial court's findings of fact to determine whether substantial evidence supports them and whether those findings, in turn, support the conclusions of law. *Ridgeview Props. v. Starbuck*, 96 Wn.2d 716, 719, 638 P.2d 1231 (1982). "Substantial evidence" is the quantum of evidence "sufficient to persuade a

5

rational fair-minded person the premise is true." *Sunnyside Valley Irrigation Dist. v. Dickie*, 149 Wn.2d 873, 879, 73 P.3d 369 (2003). We will not "disturb findings of fact supported by substantial evidence even if there is conflicting evidence." *Merriman v. Cokeley*, 168 Wn.2d 627, 631, 230 P.3d 162 (2010). We defer to the trial judge on issues of witness credibility and persuasiveness of the evidence. *Boeing Co. v. Heidy*, 147 Wn.2d 78, 87, 51 P.3d 793 (2002).

Under RCW 7.21.010(1)(b), a person is in contempt based on "[d]isobedience of any lawful judgment, decree, order, or process of the court." All acts must be "intentional." RCW 7.21.010(1).

Our record shows the parties have a long history of disputes and settlements. In 1994, they agreed to an 8' x 10' turnaround easement on the Binghams' property in favor of the Headricks. They then modified that agreement in 1998. The Binghams then agreed to "relocate [their] barn in favor of [the Headricks] turn-around area." CP at 349. The barn was to be placed near a maple tree. Then, in 1999, the Headricks asked to enforce the 1994 and 1998 agreement regarding the barn placement that interfered with the Headricks' use of their turnaround. The trial court found the Binghams' barn had "not been repositioned to the 'limit' of the maple tree as was agreed by and between the parties." CP at 190. The court ordered the Binghams to move the barn by "June 1, 2000, in conformance with the agreement reached by the parties." CP at 34. The court ordered, "The Headricks' turnaround area shall be expanded by the area

6

created by moving the red barn." CP at 42-43. This evidence sufficiently shows the turnaround easement was expanded.

The Binghams argue, even if expanded, the expansion was not as large as depicted in the Weinert survey. The Headricks counter this argument cannot be raised for the first time on appeal. But the Binghams raised this argument in their CR 60 motion for relief of judgment. Generally, arguments raised in a CR 60 motion are preserved for appeal. *Gutz v. Johnson*, 128 Wn. App. 901, 911, 117 P.3d 390 (2005). Although we address the Binghams' argument, it is unpersuasive.

The Headricks hired Mr. Weinert to survey the area based on the parties' agreement. The survey showed an area of approximately 8' x 22' for a turnaround area. The Binghams reviewed this survey and solely objected to the term "parking" in labeling the area. Exhibit 5. The survey was corrected and re-recorded without further objection and the barn was moved. This evidence sufficiently shows the Binghams were aware of the size of the expansion. We defer to the trial court's evidence weight and witness credibility determinations that the Binghams were aware of the expansion and intentionally violated the 2000 order. Therefore, we conclude the trial court did not abuse its discretion in finding the Binghams in contempt and ordering sanctions.

## B. Attorney Fees

The Headricks request attorney fees on appeal under RCW 7.21.030(3). RCW 7.21.030(3) allows a court to order a person found in contempt of court to pay a party's costs incurred in connection with the contempt proceeding, including reasonable

No. 32567-9-III
*Bingham v. Headrick*

attorney fees.  A party who successfully defends the appeal of a contempt order may recover attorney fees under RCW 7.21.030(3).  *In re Marriage of Curtis*, 106 Wn. App. 191, 202, 23 P.3d 13 (2001).  The Headricks are the prevailing parties and under RCW 7.21.030(3) are entitled to attorney fees on appeal.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Brown, A.C.J.

WE CONCUR:

_____
Korsmo, J.

_____
Lawrence-Berrey, J.

8