IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| CHRISTOPHER DOUGHERTY,<br><br>    Appellant,<br><br>  v.<br><br>JANES GYPSUM FLOORS, INC;<br>MAXXON CORPORATION;<br>INNOVATIVE WORLDWIDE<br>LOGISTICS, INC; and DOES 1-10,<br>inclusive,<br><br>    Respondent. | No. 85442-9-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

COBURN, J. — Christopher Dougherty, a warehouse worker, was injured when a delivery truck backed into him while making a delivery. Dougherty sued, among others, the freight broker, Innovative Worldwide Logistics (IWL), alleging several claims of negligence and served process on IWL's registered agent in Washington state. The summons and complaint were never forwarded to IWL, which failed to appear. Dougherty subsequently obtained a default judgment. IWL learned of the proceedings shortly thereafter and moved to vacate under CR 60(b). The trial court granted the motion. Dougherty argues that the trial court abused its discretion in granting the motion to vacate. We disagree and affirm.

FACTS

IWL is a "freight broker" which connects companies needing to ship goods with

motor carriers who transport the goods and handles payment of the motor carrier. IWL, whose principal office is in Tennessee, maintains contractual relationships with a series of motor carriers which are individual truck operators. IWL does not employ, supervise, or train truck drivers, nor does it own any trucks used for shipping or deliver cargo itself. In February, IWL was contacted by its client, Maxxon, who needed floor covering underlays transported from Las Vegas, Nevada to Washington state. Maxxon Corporation leases a warehouse in Monroe, Washington. IWL contracted with Desert Eagle, which transported the goods from Las Vegas to Janes Gypsum Floors, Inc. (JGF), an unmanned warehouse in Monroe. According to the rate confirmation sheet, the receiver was to hire "temps" to unload.

On March 1, 2022 Christopher Dougherty was working for Labor Works, which assigned him to work at JGF in Monroe at the warehouse. According to Dougherty's complaint, a commercial truck backed into him while he was working at the warehouse, pinning him between the truck and a forklift, resulting in serious injuries. IWL received confirmation of the delivery on March 1 but neither Desert Eagle nor JGF, the receiver of the goods, advised IWL that an accident had occurred during the delivery.

In September 2022 Dougherty sued JGF, Maxxon Corporation, and IWL. In its first amended complaint, Dougherty alleged that IWL had an obligation to ensure that "its commercial truck operators used its vehicles in a safe manner," and to "not be negligent in its hiring, training, supervision, and retention of commercial truck operators." Dougherty claimed that IWL was responsible for tortious conduct of the truck driver through the doctrine of respondeat superior, and also was separately liable for the damages to Dougherty because of negligent hiring, supervision and retention of

2

the truck driver.  Dougherty also claimed IWL was liable through the doctrine of negligent entrustment of a commercial vehicle to the truck driver, who IWL "should have known was reckless, heedless, or incompetent to be entrusted with the commercial vehicle."

On December 9, Gregory Bailey, a process server hired by Dougherty, served the complaint and summons on Keith Baldwin, of All American Agents of Process, at a Seattle address because that person was IWL's registered agent.  Bailey's declaration gave the date and time of service, named Baldwin and listed the specific address of delivery.

IWL did not receive the complaint and summons and did not respond to the lawsuit.  On January 30, 2023, Dougherty moved for an order of default against IWL, noting that it had failed to appear or respond to the suit.  On February 10, the trial court granted the motion and issued an order of default against IWL.  On April 25, Dougherty filed a motion for entry of default judgment against IWL in the amount of $3 million.  That same evening, a Maxxon executive called IWL president Mark Kreider, asking if he was aware of the lawsuit.  Kreider stated in a declaration that this was the first he learned of the accident or lawsuit.  Kreider contacted his attorneys the next day.  IWL's attorney filed a notice of appearance on April 26.  The day after, Dougherty's counsel's paralegal emailed IWL's attorney copies of several documents, including a calendar note for motion for entry of judgment.

The next week, IWL's attorney filed a response in opposition to Dougherty's motion for default judgment, two days before the scheduled default judgment hearing.  The response in opposition included the date of the judgment hearing, May 5, but did

not indicate any time or whether the motion was to be heard with or without oral argument.[1]  In support of its response, IWL submitted a declaration from Baldwin.  At that time, Baldwin had been an attorney for approximately 56 years and had worked as a registered agent for service or original process since he started practice.[2]  He stated that, generally, process servers will call him before attempting to serve process on him to arrange a time and ensure that he will be in the office when they arrive.  Baldwin stated he did not recall receiving any calls around December 9, 2022, alerting him of an ongoing attempt to serve process in this matter.  Baldwin explained that, as a rule, when he did receive service of process on behalf of a company, he would immediately copy the documents into a system to ensure he had a record of his receipt, then immediately forward a copy to the named party to alert them of the litigation.  He also would note on the copy retained and the copy sent the date of service, his office phone number, and when it was sent to the company, usually the same day service occurred.  And he would include a notation to pass along the documents to the relevant company's insurance company upon receipt.  Baldwin stated he reviewed his records and asserted that "no such record of service of process for this matter exists."

The next day, Dougherty filed a supplemental declaration of service from Bailey that provided more detailed information.  Bailey stated he had called Baldwin and spoke to him for two minutes on the phone prior to serving him.  The declaration included what appears to be a copy of a phone record highlighting a call made on December 9, 2022 at "10 06 26 AM" to a specific Seattle phone number and a number "2" that may be an

---

[1] Plaintiff's motion for entry of judgment does not indicate in the caption whether the motion is noted for a hearing or whether it was to be heard with or without oral argument.  It appears that information was only indicated on a calendar note.

[2] According to IWL, Baldwin passed away in January 2024.

4

indication of the length of call. Bailey said he spoke with Baldwin for about five minutes in his office to make sure he was the appropriate registered agent for IWL because initially Baldwin was "unsure." He described Baldwin as being between 70 and 75 years old, and that Baldwin told Bailey he was "very hard of hearing, potentially partially def [sic]." Bailey said the office was about 6 feet by 10 feet and "extremely unorganized."

No attorney for IWL appeared at the May 5 hearing and the trial court entered the requested default judgment for $3 million against IWL. After the hearing Dougherty informed IWL that the judgment had been entered. IWL offered to pay counsel fees and costs as part of a stipulation to vacate the judgment, which Dougherty declined. IWL's attorney later submitted a declaration explaining that he misread the calendar entry and did not realize the motion for default judgment would be heard with oral argument, resulting in his absence.

On May 16, IWL filed a motion to vacate the order of default and default judgment under CR 60(b). IWL moved to vacate assuming that Baldwin was served, but maintaining that it was undisputed that he failed to forward the summons and complaint to IWL. In its reply in support of its motion to vacate, IWL explained in a footnote "After IWL filed the Motion, Mr. Baldwin contacted IWL's counsel by phone suggesting that he may actually have received the summons and complaint. IWL's counsel are exploring this with Mr. Baldwin, but as presented herein, Mr. Baldwin's possible receipt of the summons and complaint does not impact IWL's arguments." Dougherty opposed IWL's motion. At the motion hearing, the trial court found that the mistakes made by the registered agent which prevented IWL from receiving notice of the suit was "excusable neglect." The trial court further found that IWL presented a

prima facie defense to the claims asserted by Dougherty. The trial court granted IWL's motion[3] and ordered it to pay Dougherty's attorney fees for his time spent in obtaining default and responding to the motion to vacate.

Dougherty appeals.

DISCUSSION

Dougherty argues that the trial court abused its discretion in vacating the orders of default against IWL because IWL's failure to respond was not the result of excusable neglect and IWL did not establish a "virtually conclusive" defense to Dougherty's complaint. We disagree.

"Default judgments are generally disfavored in Washington based on an overriding policy which prefers that parties resolve disputes on the merits." Showalter v. Wild Oats, 124 Wn. App. 506, 510, 101 P.3d 867 (2004) (citing Griggs v. Averbeck Realty, Inc., 92 Wn.2d 576, 581, 599 P.2d 1289 (1979)). Our primary concern in reviewing a trial court's decision on a motion to vacate is whether that decision was just and equitable. TMT Bear Creek Shopping Ctr, Inc. v. Petco Animal Supplies, Inc., 140 Wn. App. 191, 200, 165 P.3d 1271 (2007) (citing Calhoun v. Merritt, 46 Wn. App. 616, 619, 731 P.2d 1094 (1986)). "This system is flexible because '[w]hat is just and proper must be determined by the facts of each case, not by a hard and fast rule applicable to all situations regardless of the outcome.'" Id. (citing Little v. King, 160 Wn.2d 696, 703, 161 P.3d 345 (2007)). "A default judgment may be set aside in accordance with CR

_____

[3] IWL moved to vacate both the order of default and the default judgment. The name of the court's order is "ORDER GRANTING DEFENDANT INNOVATIVE WORLDWIDE LOGISTICS' MOTION TO VACATE DEFAULT ORDER AND JUDGMENT." But the body of the order only refers to the default judgment. This appears to be a scrivener's error as both parties are proceeding with the understanding that both default orders were vacated.

60(b). CR 55(c)(1)." Ha v. Signal Elec., Inc., 182 Wn. App. 436, 446, 332 P.3d 991 (2014).

A party moving to vacate under CR 60(b)(1) must show that "(1) there is substantial evidence supporting a prima facie defense; (2) the failure to timely appear and answer was due to mistake, inadvertence, surprise, or excusable neglect; (3) the defendant acted with due diligence after notice of the default judgment; and (4) the plaintiff will not suffer a substantial hardship if the default judgment is vacated." Id. at 448-49 (citing Little, 160 Wn.2d at 703-04). The first two factors are primary while the third and fourth are secondary. Id. (citing Little, 160 Wn.2d at 704). "[T]he four elements 'vary in dispositive significance as the circumstances of the particular case dictate.'" TMT, 140 Wn. App. at 201 (quoting White v. Holm, 73 Wn.2d 348, 352, 438 P.2d 581 (1968)). The test is not mechanical and whether a default judgment should be set aside is a matter of equity. Ha, 182 Wn. App. at 449 (citing Little, 160 Wn.2d at 704).

We review a trial court's ruling on a motion to vacate a default judgment for abuse of discretion. VanderStoep v. Guthrie, 200 Wn. App. 507, 518, 402 P.3d 883 (2017). A trial court abuses its discretion by making a decision that is manifestly unreasonable or by basing its decision on untenable grounds or untenable reasons. Id. This court is more likely to find an abuse of discretion when the trial court denies a motion to set aside a default judgment than when the trial court grants such a motion. Id. Dougherty repeatedly argues that IWL has not presented a "virtually conclusive defense," but the trial court found that IWL presented a prima facie defense.

> [W]here the moving party is able to demonstrate a strong or virtually conclusive defense to the opponent's claim, scant time will be

7

spent inquiring into the reason as which occasioned entry of the default, provided the moving party is timely with his application and the failure to properly appear in the action in the first instance was not willful. On the other hand, where the moving party is unable to show a strong or conclusive defense, but is able to properly demonstrate a defense that would, prima facie at least, carry a decisive issue to the finder of the facts in a trial on the merits, the reasons for his failure to timely appear in the action before the default will be scrutinized with greater care, as will the seasonability of his application and the element of potential hardship on the opposing party.

TMT, 140 Wn. App. at 201 (quoting White, 73 Wn.2d at 352-53).  "[I]n determining whether a party is entitled to vacation of a default judgment, a trial court's initial inquiry is whether the defendant can demonstrate the existence of a strong or virtually conclusive defense or, alternatively, a prima facie defense to the plaintiff's claims."  Id.

### Prima Facie Defense

Establishment of the first factor avoids a useless trial.  Johnson v. Cash Store, 116 Wn. App. 833, 841, 68 P.3d 1099 (2003) (citing Griggs, 92 Wn.2d at 583)).  The trial court examines the evidence and reasonable inferences in the light most favorable to the moving party to determine whether there is substantial evidence of a prima facie defense.  Id.  The defendant satisfies its burden of demonstrating the existence of a prima facie defense if it is able to produce evidence which, if later believed by the trier of fact, would constitute a defense to the claims presented.  TMT, 140 Wn. App. at 202. The court does not act as a trier of fact in making such a determination and may not conclusively determine which party's facts control.  Id. at 203 (citing Showalter, 124 Wn. App. at 512).

In this case, Dougherty's complaint alleged that IWL was liable for negligent hiring, negligent training, negligent supervision, and negligent retention of the driver of the truck that backed over Dougherty, resulting in his injuries.  The complaint also

8

alleged that IWL was liable through the negligent entrustment doctrine because it entrusted the commercial vehicle to the driver.

In order to show that an employer was negligent in hiring an employee, the plaintiff must show that (1) the employer knew or, in exercising ordinary care, should have known of its employee's incompetence when the employee was hired, and (2) the negligently hired employee caused plaintiff's injuries.  See Rucshner v. ADT, Sec. Sys, Inc., 149 Wn. App. 665, 680, 204 P.3d 271 (2009).  Negligent retention consists of an employer "retaining the employee with knowledge of his unfitness, or of failing to use reasonable care to discover it before . . . retaining him."  Anderson v. Soap Lake Sch. Dist., 191 Wn.2d 343, 358, 423 P.3d 197 (2018) (alteration in original) (quoting Peck v. Siau, 65 Wn. App. 285, 288, 827 P.2d 1108 (1992)).  To prove negligent supervision, the plaintiff must show (1) an employee acted outside the scope of his or her employment; (2) the employee presented a risk of harm to other employees or third persons; (3) the employer knew or should have known, in the exercise of reasonable care, that the employee posed a risk to others; and (4) the employer's failure to supervise was the proximate cause of injuries to other employees or third persons.  See Anderson, 191 Wn.2d at 363-64 (citing Niece v. Elmview Grp. Home, 131 Wn.2d 39, 51, 929 P.2d 420 (1997)).

In its motion to vacate, IWL presented evidence that in its role as a "freight broker," it did not have any role in hiring, training, supervising, or retaining the driver who allegedly caused Dougherty's injuries.  To support its assertions, IWL provided a declaration of its president, Mark Kreider.  This declaration stated that IWL "maintains contractual relationships" with motor carriers, but "does not employ any drivers, does

not own any trucks, does not deliver any cargo, and has not done so in 24 years of business." Kreider asserted that IWL was contacted by its client, Maxxon, requesting that IWL "broker a freight delivery of goods from Las Vegas to Washington" and IWL then brokered a contract for Desert Eagle, a motor carrier, to deliver the goods in Washington. Along with the declaration, IWL submitted the contract between itself and Desert Eagle, which provides that Desert Eagle "agrees to provide the necessary equipment and qualified personnel for completion of the transportation services required for BROKER and/or its customers." The contract does not provide for IWL to select, train, hire, or supervise any drivers selected by the motor carrier.

Dougherty argues in its reply that IWL presents no argument in response to one of its theories of liability – negligent selection of the carrier – and therefore has waived any argument that it proved a virtually conclusive defense. But despite its claim to the contrary, Dougherty did not plead negligent selection of carrier in its first amended complaint.

The evidence presented by IWL, if later believed by a trier of fact, does present a prima facie defense to Dougherty's claims that were before the trial court at the time of the motion to vacate.

### Excusable Neglect

Because IWL has presented a prima facie defense and not a "virtually conclusive" defense, we must next scrutinize the reasons for the defendant's delay in responding. Johnson, 116 Wn. App. at 842. The record demonstrates that IWL's failure to respond was a mistake by the company's registered agent in Washington and not IWL's willful intent to ignore the lawsuit.

The record suggests that Baldwin never forwarded the summons and complaint to IWL because he believed that he never received it. The context in which Bailey described serving Baldwin, Baldwin's initial declaration, and the fact IWL abandoned its position that Bailey had not been served after again hearing from Baldwin suggests that his initial belief that the summons and complaint did not exist was a mistaken one.[4]

Dougherty argued below as it does on appeal that because IWL hired a company to act as its registered agent, this court should treat Baldwin as an IWL employee and, as in TMT, any breakdown in internal office management and procedure was inexcusable. In TMT, a company's in-house legal assistant received the complaint and summons, but failed to enter the information into the company's calendaring system or notify the general counsel before going out of town for several weeks. 140 Wn. App. at 198. As a result, the company failed to appear and default judgment was entered against it. Id. The trial court denied the company's motion to vacate. Id. The court held that the company's "breakdown of internal office procedure," was inexcusable. Id. at 213. Unlike TMT, the mistake here was not the result of an "internal office management and procedure." Id.

The trial court found Baldwin was not a functional employee, but a contracted worker for service and his error constituted excusable neglect. Whether Baldwin's conduct was excusable does not turn solely on whether he was or was not a functional employee. This court may affirm on any grounds. Hoflin v. City of Ocean Shores, 121

---

[4] Though the process server estimated the age of the registered agent and reported that Baldwin, who described himself as having difficulty hearing, we are cognizant that neither age nor having difficulty hearing alone establishes incompetence. Relevant here is the fact that after Dougherty submitted the more detailed description of the circumstances in which Baldwin was served, IWL, apparently after hearing from Baldwin, reversed its position claiming that Baldwin was never served.

Wn.2d 113, 134, 847 P.2d 428 (1993). As this court stated in TMT, what is just and proper must be determined by the facts of each case, not by a hard and fast rule applicable to all situations regardless of the outcome. 140 Wn. App. at 200. The facts in this case are not as simple as Dougherty attempts to portray. This is not the situation where a registered agent is properly served and simply fails to forward it to the company it is paid to represent. This is a case where the registered agent filed a declaration asserting that he had never been contacted to be served and had never been served. It was after the process server submitted a more detailed declaration of the circumstances in which Baldwin was served that IWL reversed its position claiming that Baldwin had never been served. Undisputed is the fact Baldwin never forwarded the summons and complaint to IWL. Thus, the record suggests that Baldwin's mistaken belief that he had never been served led him to believe that the summons and complaint never existed. Under an abuse of discretion standard, we conclude that a finding of mistake or excusable neglect under these circumstances is not improper. That standard of review weighs significantly in our consideration as recognized in TMT, where this court upheld a denial to vacate a default judgment. We explained:

> TMT's citation to Showalter, 124 Wn. App. at 514, 101 P.3d 867, does not convince us otherwise. In that case, the court found that the trial court did not abuse its discretion by vacating a default judgment on the basis of excusable neglect when the failure to respond was due to defective office communication. Here, the failings at issue were more egregious than those at issue in Showalter and involved more than the single omission at issue in that case. Moreover, the court's decision finding that the trial court did not abuse its discretion does not necessarily indicate that the trial court would have abused its discretion by denying a motion to vacate under similar circumstances, a situation more akin to the one at issue here.

TMT, 140 Wn. App. at 213 n.11. In Showalter, a paralegal bypassed the company's

12

typical protocols for receipt of service causing the documents not to reach the internal claims administrator to whom they should have been forwarded.  124 Wn. App. at 509. The paralegal instead gave them to a safety and risk manager, who routinely received copies of such service documents "for informational purposes only" and did not understand that the paralegal wanted the manager to forward the copies to the claims administrator.  Id. at 514.  Both the paralegal and risk manager "emphasize[d] that this misunderstanding was inadvertent and that they did not intentionally fail to respond to Showalter's lawsuit."  Id.  Noting the nature of the error, this court affirmed the trial court's vacation of the default judgment.  Id. at 515.

Dougherty cites to several out-of-state cases, none of which have similar facts and all of which rely on their state's rules and case law, not Washington's.  We need only look at Washington law to conclude that the trial court did not abuse its discretion in determining IWL's failure to respond was excusable under CR 60(b)(1).

Dougherty also argues, as a matter of public policy, this court should not reward IWL for designating a negligent registered agent "on the cheap"[5] without any safeguards in place.  Nothing in the record establishes that IWL knowingly designated a negligent registered agent.  Dougherty also fails to recognize that being on the receiving end of a default judgment is a risk, not a benefit, of not getting proper service, and that the primary concern in reviewing a trial court's decision on a motion to vacate is whether that decision was just and equitable.

The facts of this case demonstrate that IWL's failure to respond was not

---

[5] Dougherty cites to All American Agents of Process's website where it advertises that it provides "blanket coverage" of a process agent in all 50 states "for a low one-time fee of $66.50."

deliberate or even neglectful.  See Ha, 182 Wn. App. at 452 (affirming vacation of default judgment where defendant's failure to respond was not deliberate or even neglectful when the company's retained attorney and financial advisor for bankruptcy proceedings mistakenly forwarded the summons and complaint to the wrong insurance company).

### Secondary Factors

After evaluating the primary factors, this court then evaluates the secondary factors – whether the defendant acted with due diligence after notice of the default judgment and whether the plaintiff will suffer hardship if the judgment is vacated.  Ha, 182 Wn. App. at 448-49 (citing Little, 160 Wn.2d at 703-04).

A motion to vacate under CR 60(b)(1) must be filed within a reasonable time and within one year of the judgment.  Id. at 454 (citing Luckett v. Boeing Co., 98 Wn. App. 307, 310, 989 P.2d 1144 (1999)).  What constitutes a "reasonable time" depends on the facts and circumstances of each case.  Id. (citing Luckett, 98 Wn. App. at 312).  The "critical period" is between when the moving party became aware of the judgment and when it filed the motion to vacate.  Id.  Courts have found that three months is not within a reasonable time, but within one month satisfies the due diligence requirement.  Id. (citing Gutz v. Johnson, 128 Wn. App. 901, 919, 117 P.3d 390 (2005)).

Here, IWL learned of Dougherty's motion for default on the evening of April 25, 2023 and its president contacted the company's attorneys the next day.  IWL submitted a response in opposition to the entry of the default judgment on May 3, two days before the scheduled default judgment hearing.  When IWL missed the hearing and learned of the entry of the judgment the same day, it offered to pay attorney fees and costs so that

14

Dougherty would stipulate to vacate the judgment. Dougherty conceded below that the "failure to appear here, though, to defend the default entry isn't the primary issue. The primary issue was IWL's negligence months ago by not appearing in this case."[6] After unsuccessfully convincing Dougherty to stipulate to vacate the judgment, IWL filed a motion to vacate the judgment on May 16, less than two weeks after the entry of default judgment. This falls within the one month that this court has found satisfies the due diligence requirement.

Dougherty argues that vacation of the default judgment will result in substantial hardship because it will lead to a delay and further cost to the plaintiff. However, "vacation of a default judgment inequitably obtained cannot be said to substantially prejudice the nonmoving party merely because the resulting trial delays resolution on the merits." Ha, 182 Wn. App. at 455 (citing Johnson, 116 Wn. App. at 842).

The trial court's finding that IWL met the four requirements for vacating a default judgment under CR 60(b)(1) was based on tenable grounds. The trial court did not abuse its discretion in vacating the default orders.

We affirm.

Coburn, J.

WE CONCUR:

Feldman, J.

Chung, J.

___

[6] At the time the IWL filed its response, it was represented by its retained counsel with one firm and also had insurance-appointed counsel through a second firm. Both attorneys agreed that counsel from the first firm would handle the opposition to Dougherty's motion for default judgment because the father of the insurance-appointed attorney with the second firm had recently passed away.